## ROBERTSON v. ROSENTHAL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
            SOUTHERN DISTRICT OF NEW YORK.

        No. 57.  Argued November 4, 1889.—Decided December 16, 1889.

Ordinary headless hair-pins, made of steel wire and iron wire, when imported
  into the United States, are subject to a duty of 45 per cent as "manu-
  factures, articles or wares, not specially enumerated or provided for,"
  "composed wholly or in part of iron, steel, copper," etc., and not as
  "pins, solid-head, or other."

THE case as stated by the court in the opinion was as follows:

This was an action brought to recover duty alleged to have
been illegally exacted by the defendant, as collector of the port
of New York, upon certain merchandise imported by the plain-
tiffs.  It was stipulated on the trial that if the plaintiffs should
be entitled to recover on the main question raised by their pro-
test, a verdict should be entered generally in plaintiffs' favor,
subject to adjustment as to formal requisites and to amount,
at the custom-house, under the direction of the court.

Evidence was given tending to show that on or about July
5th and 7th, 1884, the plaintiffs imported certain iron wire
and steel wire hair-pins, upon which the collector assessed a
duty of 45 per cent ad valorem, under that part of Schedule C,
section 2502 of the Revised Statutes, as enacted by the act of
March 3, 1883, 22 Stat. 488, 501, c. 121, which reads:

"Manufactures, articles or wares, not specially enumerated
or provided for in this act, composed wholly or in part of iron,
steel, copper, . . . and whether partly or wholly manu-
factured, forty-five per centum ad valorem."

The plaintiffs paid the amount of duty assessed, and pro-
tested as follows:

"We protest against your decision as to the rate and amount
of duties to be paid on the hair-pins entered by us for consump-
tion July 5, 1884, per Donau 86,888, from Bremen, because

they are dutiable at 30 per cent ad valorem under tariff Schedule C, pins, solid-head, or other.

"If not so dutiable they are dutiable under said schedule at the rates per pound prescribed for the iron or steel wire of which they are made.

"We pay the excess exacted under compulsion solely to get the goods."

To sustain the issues upon their part, the plaintiffs introduced Leopold Kramer, who testified that he was an importer of fancy goods in the house of plaintiffs, and that their business was the general importation of notions, etc., and who identified the invoices and entries involved in this action, and also showed that the rate of duty upon said hair-pins, if classified as "Pins, solid-head or other," would not be less than the rate of duty chargeable upon the iron or steel wire from which they were made.

Witness testified further as follows: "These samples are samples of the articles imported, and are known ordinarily as hair-pins. There are also samples of various other kinds of pins: one is a crimping pin, one a solid-head pin, one a pin with a black head called a bonnet pin, used to fasten shawls; also diaper pins. They are made of iron wire and steel wire, and have no heads at all. Diaper pins and crimping pins have not solid heads. They have no heads."

And on cross-examination: "Some pins have heads, but are not solid-headed pins. Bonnet pins and shawl pins are pins with heads, but are not solid-headed pins. Those pins [referring to card] are pins with heads, but are not solid-headed pins." "Q. Are solid-headed pins the ordinary pins that everybody has? Ans. Yes; not everybody. I am familiar with dress-pins. I don't know anything about clothes-pins, except that there are such things. I know there are linch-pins and king-pins, for locomotives, but they are not used for the same purpose as the articles in suit."

Plaintiffs having rested, defendant's counsel moved the court to direct a verdict for the defendant upon the following grounds, to wit.

"1st. That in prior laws pins, solid-head or other, and hair-

pins were both provided for, which shows that, as Congress uses the phrase pins, solid-head, or other, it does not include hair-pins.

"2d. That the phrase pins, solid-head, or other, applies only to pins with heads of some kind.

"3d. Generally; that the evidence does not make out a case for recovery by the plaintiffs."

Which motion the court denied; to which ruling defendant's counsel then and there excepted.

The court thereupon charged the jury as follows:

"Gentlemen, if you think these articles are pins, according to the common understanding of the class of pins that are known as solid-head pins, or other pins, return a verdict for the plaintiffs; if not, return a verdict for the defendant. You may take the case."

The jury having returned a verdict for the plaintiffs, and the amount having been subsequently ascertained as agreed, judgment was entered against the collector accordingly, and the cause brought here on writ of error.

*Mr. Solicitor General* for plaintiff in error.

*Mr. Edward Hartley* (with whom was *Mr. Walter H. Coleman* on the brief) for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The articles in question were ordinary headless hair-pins, made of steel wire and iron wire, and the question is whether they were dutiable as "pins, solid-head or other."

By section 13 of the act of July 14, 1862, 12 Stat. 555, 557, c. 163, a duty of five per centum ad valorem, in addition to then existing duties, was levied on many articles, including "pins, solid-head or other," and "manufactures, articles, vessels and wares, not otherwise provided for, of gold, silver, copper, brass, iron, steel, lead, pewter, tin, or other metal, or of which either of these metals or any other metal shall be the component material of chief value."

By section 21 of the act of July 14, 1870, 16 Stat. 264, c. 255, a duty of fifty per centum ad valorem was levied " on hair-pins made of iron wire."

Under section 2504, Title XXXIII of the Revised Statutes, " Schedule M, — Sundries," we find, " Hair-pins, made of iron wire : fifty per centum ad valorem." " Pins, solid-head or other : thirty-five per centum ad valorem." 2d ed., pp. 476, 480. And in " Schedule E, — Metals," (p. 465) : " All manufactures of steel, or of which steel shall be a component part, not otherwise provided for ; forty-five per centum ad valorem. But all articles of steel partially manufactured, or of which steel shall be a component part, not otherwise provided for : shall pay the same rate of duty as if wholly manufactured." And also (p. 467) : " Manufactures, articles, vessels, and wares not otherwise provided for, of . . . iron, . . . or other metal, (except . . . steel,) or of which either of these metals shall be the component material of chief value : thirty-five per centum ad valorem."

In March, 1875, certain imported steel hair-pins having been held at the port of New York dutiable at fifty per cent ad valorem, because of their similarity to iron wire hair-pins, the Treasury Department decided that this was erroneous, and that they were properly chargeable with the rate of duty applicable to manufactures of steel not otherwise provided for. Synopsis T. Dec. 1875, p. 56, No. 2140.

By section 2502 of Title XXXIII of the Revised Statutes as enacted by the act of March 3, 1883, 22 Stat. 501, c. 121, " Schedule C, — Metals," a duty of thirty per centum ad valorem was levied on " Pins, solid-head or other ; " and by the last paragraph in the same schedule, on " Manufactures, articles, or wares, not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, . . . or any other metal, and whether partly or wholly manufactured : forty-five per centum ad valorem."

It will be perceived that although hair-pins are not mentioned *eo nomine*, this last paragraph covers iron and steel hair-pins, as was ruled as to the latter by the department in 1875, in the construction and application of similar language.

Inasmuch as Congress, for the thirteen years prior to 1883, treated hair-pins for revenue purposes as a distinct article from "pins, solid-head or other," we consider it unreasonable to conclude that the legislation of 1883 was intended to do away with a distinction manifestly regarded as inherent in the thing itself.

In short, it is doubtful if it could ever have been properly held that hair-pins were *ejusdem generis* with the pins referred to in the tariff acts, but if this could have been so prior to 1870, we are of opinion that at that time Congress assigned them to a class by themselves, because essentially *sui generis*, and, therefore, that their not being specifically enumerated in 1883 did not relegate them to the category of "pins, solid-head or other," as ingeniously argued by counsel.

From these views the conclusion follows that the court below should have instructed the jury to find for the defendant.

*The judgment is reversed, and the cause remanded with a direction to award a new trial.*