## WHITE et al. v. UNITED STATES.

### (Circuit Court, S. D. New York. January 15, 1895.)

CUSTOMS DUTIES—CLASSIFICATION—MANUFACTURES OF JUTE AND FLAX — BURLAPS.

Articles woven of flax, and of jute and flax, less than 60 inches in width, used chiefly in the manufacture of clothing, for the particular purposes of stiffening collars and fronts of coats and other garments, and as bands in trousers, etc., the goods being known commercially as "canvas," "paddings," "ducks," "coatings," etc., are properly dutiable as manufactures of flax, under paragraph 371 of the tariff act of October 1, 1890, and as manufactures of jute and flax, under paragraph 374 of that act, and are not dutiable as burlaps, not exceeding 60 inches in width, under paragraph 364 of the same tariff act.

At Law.

Appeal by the importers from a decision of the board of general appraisers affirming the decision of the collector of the port of New York in the classification for customs duties of certain articles entered at that port from a foreign country March 13, 1893, which articles were classified for duty, as to part thereof, as manufactures of jute and flax, valued at over 5 cents per pound, at 40 per cent. ad valorem, under paragraph 374 of the tariff act of October 1, 1890, which is as follows:

"374. All manufactures of jute, or other vegetable fibre, except flax, hemp or cotton, or of which jute, or other vegetable fibre, except flax, hemp or cotton, is the component material of chief value, not specially provided for in this act, valued at five cents per pound or less, two cents per pound; valued above five cents per pound, forty per centum ad valorem."

As to the other part of the merchandise composed entirely of flax, it was classified by the collector as manufactures of flax, under 100 threads to the square inch, at 50 per cent. ad valorem, and, over 100 threads to the square inch, 35 per cent. ad valorem, under paragraph 371 of the same tariff act, which is as follows:

"371. All manufactures of flax or hemp, or of which these substances, or either of them, is the component material of chief value, not specially provided for in this act, fifty per cent. ad valorem: provided, that until January first, eighteen hundred and ninety-four, such manufactures of flax containing more than one hundred threads to the square inch, counting both warp and filling, shall be subject to a duty of thirty-five per centum ad valorem in lieu of the duty herein provided."

The importers duly filed their protest with the collector, claiming the merchandise to be burlaps, not exceeding 60 inches in width, and dutiable at 1⅝ cents per pound, under paragraph 364, Schedule J, of the same tariff act, which is as follows:

"364. Burlaps, not exceeding 60 inches in width, of flax, jute or hemp, or of which flax, jute, or hemp, or either of them, shall be the component material of chief value (except such as may be suitable for bagging for cotton), one and five eighths cents per pound."

The board of general appraisers, upon the testimony taken in a previous case, in which a decision of the board in favor of the importers was subsequently affirmed by the circuit court (In re White, 53 Fed. 787), found in the present case that the protests of the importers were not well taken, and were accordingly overruled, and the decision of the collector affirmed. The case being appealed into the circuit court by the importers, further evidence was taken before a referee in the circuit court, and the case came on to be tried upon the return of the board of general appraisers, and the evidence taken in the case above cited (In re White, reported in 53 Fed. 787), and upon the evidence now taken in the circuit court. The testimony in behalf of the importers tended to show that, at the date of the passage of the tariff act in question, the term "burlaps" included in trade and commerce the more or less coarsely-woven material composed either exclusively of jute, as in the former Case of White, reported as above, or of jute and partly of flax, and occasionally of all flax; that, prior to 35 years ago, burlaps were chiefly, if not entirely, composed of flax, but that, after the introduction of jute as a cheaper raw material, the commercial burlaps for many years prior to 1890 had consisted very largely of articles manufactured entirely of jute, although often combined with a warp or weft thread of flax; that the commercial burlaps came in the standard width of 40 inches, and that they were known in trade and commerce as wide as 140 inches, and as narrow as 20 inches, or even less; and that the present importations were included within the general class of burlaps. Numerous trade witnesses called in behalf of the government's contention gave testimony tending to show that in 1890, and for many years prior thereto, the commercial burlaps was a coarse-woven article, composed entirely of jute, and containing not more than from 20 to 30 threads to the square inch, including warp and filling; that the articles included in the present suit were not known or considered commercially in trade as "burlaps," but were known by their specific names, such as "Pelissier canvas or padding," "Cream padding," "Paris duck," "coating," etc.; that these articles were used in the manufacture of clothing for the particular purposes of stiffening the collars and fronts of coats and other garments, and for use as bands in trousers, etc. The witnesses from the clothing trade also testified that they purchased and used in their business an article commercially known as "burlaps," which was a coarse, heavy fabric composed of jute, which was employed to give weight and body to cheap articles of clothing. Other trade witnesses knew the commercial "burlaps"; namely, the coarse, heavy-woven jute articles, of 40 inches in width, and wider, which

were used in the upholstery trade for the covering of furniture, etc., and were entirely distinct from the canvas, paddings, and coatings involved in the present suit. It was also shown by competent evidence in behalf of the government that the articles covered by the invoices in the present case were of much finer texture than burlaps which were recognized as such by the government's trade witnesses, the articles in suit running from 44 to 70 threads to the square inch. On the trial it was contended on behalf of the government and the decision of the board of general appraisers that the evidence taken in the former case before the board of appraisers and in the present case in the circuit court showed that the canvases, paddings, ducks, coatings, etc., now under consideration, were an entirely different article from the jute goods which were decided to be burlaps in the White Case, 53 Fed. 787; and that the board of general appraisers and the circuit court were amply justified in finding that the present importations were not commercially burlaps, but were manufactures of flax, or of jute and flax, known by the specific names above given. The United States attorney also contended that the omission in the tariff act of 1890 of the special provisions for "ducks, canvas, paddings," as found in Schedule J of the tariff act of March 3, 1883, existing, as did that provision, alongside of a provision for manufactures of flax, and a provision for burlaps, in the act of 1883, did not throw such ducks, canvas, and paddings into the designation of "burlaps," found also in paragraph 364 of the tariff act of October 1, 1890, but relegated them to the special provisions in the later act for manufactures of flax, and manufactures of jute and flax, as correctly decided by the collector; citing Robertson v. Rosenthal, 132 U. S. 460, 10 Sup. Ct. 120.

Stephen G. Clarke, for the importers.

Wallace Macfarlane, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty.

WHEELER, District Judge (after stating the facts). This importation is of goods woven of flax, and of jute and flax, much less than 60 inches wide, and used chiefly in clothing. Similar goods were found, in favor of the same importers, to be burlaps, and assessed as such. In re White, 53 Fed. 787. These are protested to be burlaps, not exceeding 60 inches in width, under paragraph 364 of the tariff act of 1890, but are found now to be manufactures of jute and of flax not specially provided for, under paragraphs 371 and 374. Such goods were specially mentioned, as manufactures of flax, jute, or hemp, in the tariff act of 1883, and provided for as such. That special mention was omitted in the act of 1890; but they were such manufactures, and not burlaps, before, and that omission did not change the nature of the goods, nor the class to which they belonged. Robertson v. Rosenthal, 132 U. S. 460, 10 Sup. Ct. 120. The former finding, although followed by the court as a finding, was not conclusive, if misleading, as to future importations. Falk v. Robertson, 137 U. S. 225, 11 Sup. Ct. 41. The finding in this case seems to have been well warranted, and, as said by Judge Coxe in respect to the former finding, it should be undisturbed. Decision of board of general appraisers affirmed.