### CARLOWITZ *v.* UNITED STATES (No. 564).[1]

PLATES, LININGS, AND CROSSES.

It was the evident purpose of the Congress by paragraph 439, tariff act of 1909, to distinguish between the completed article and the several grades of materials entering into its composition, and to impose on materials prepared for the use of furriers and other manufacturers of fur an intervening rate of duty, higher than the rate upon dressed skins that had theretofore been construed by the board as proper and applicable, and at the same time lower than the rate provided for manufactures made from such materials.   The words "plates, linings, and crosses" are employed in that paragraph as words of extension rather than specification and the furriers' articles of the importation, whether dressed or dyed or not, were properly assessed at 35 per cent ad valorem under that paragraph.

### United States Court of Customs Appeals, May 31, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7125 (T. D. 31085).

[Affirmed.]

*Brown & Gerry* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal from a decision of the Board of General Appraisers is confined to the following protests, and description of goods covered by the same:

Protest 397880, dressed and dyed kid skins temporarily sewn into the form of crosses.
Protest 425072, dressed and dyed kid skins temporarily sewn into the form of crosses.
Protest 401905, dressed and dyed kid skins temporarily sewn into the form of crosses.
Protest 408554, dressed and dyed kid skins temporarily sewn into the form of crosses, and natural slink lamb skins temporarily sewn into the form of crosses.
Protest 418703, dressed slink lamb skins temporarily sewn into the form of crosses.
Protest 423305, dressed susliki skins temporarily sewn into the form of linings.

---

This statement of subject matter is as given in appellants' brief with the exception of the last two, which are designated by appellants as "natural," but which we deem fairly within this record dressed skins. That condition, however, is not held controlling.

The controversy involves the construction and application of paragraph 439 of the tariff act of August 5, 1909, which is as follows:

439. Furs dressed on the skin, not advanced further than dyeing, but not repaired, twenty per centum ad valorem; manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses, thirty-five per centum ad valorem; articles of wearing apparel of every description, partly or wholly manufactured, composed of or of which fur is the component material of chief value, fifty per centum ad valorem. Furs not on the skin, prepared for hatters' use, including fur skins carroted, twenty per centum ad valorem.

The merchandise was assessed for duty under the second provision of that paragraph at 35 per cent ad valorem. The Government maintains this classification and assessment for dutiable purposes correct. The importers, appellants, maintain that the merchandise is properly dutiable under the first provision of that paragraph for furs dressed on the skin, etc., at 20 per cent ad valorem. The board overruled the protestants' claims and they appeal.

We think the intent of Congress will be better subserved by consideration of the entire paragraph. It bears evidence when considered in all of its framework and import of having been intended as a comprehensive provision levying duties upon fur articles at rates graded according to condition, commencing with the fur dressed on the skin and extending to and including articles of wearing apparel made up of such furs in the various degrees of manufacture. Whether the purpose was fully accomplished is not now in issue.

The first provision is—

Furs dressed on the skin, not advanced further than dyeing, but not repaired, twenty per centum ad valorem;

The second provision is—

manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses, thirty-five per centum ad valorem;

The third provision is—

articles of wearing apparel of every description, partly or wholly manufactured, composed of or of which fur is the component material of chief value, fifty per centum ad valorem.

The final provision is one covering merchandise akin to that covered by the first provision and levying thereon the same rate of duty, thus observing the classification of such merchandise according to rates of duty and condition in which imported.

The first provision relates to the goods as taken from the animal and dressed, but not further advanced than dyeing nor repaired.

The second is manifestly a material provision.

The whole framework of the paragraph and the language employed in the precise provision indicates that it is intended to embrace for dutiable purposes those materials which are prepared for use by, and usually sold to, manufacturers of fur articles.

Whilst the provision opens with the phrase "manufactures of furs," the subsequent limitations placed upon that phrase in that such shall be "further advanced than dressing and dyeing," and be such as are "prepared for use as material," indicate that the term "manufactures of furs" was not used by Congress with a view to including therewithin and making here dutiable only such things as arise to the dignity of manufactures *of* furs in the sense of articles completed, ready for final use, as distinguished from such manufactures constituting materials for further manufacture. It was a phrase used by Congress in connection with the subsequent limiting words to define by the entire expression a condition of merchandise upon which a rate of duty is levied, which, however, in fact had not reached a condition coming fully and completely within the term "manufactures of furs" in the sense last above stated. The provision transposed, it seems to us, essentially provides as if it read "materials prepared for use when made of furs further advanced than dressing or dyeing." This provision is tantamount to a description of the condition of merchandise constituting materials for and levying duties thereupon rather than an enactment assessing duties upon manufactures of that merchandise. That result is inherent from the very terms of limitation placed upon the phrase "manufactures of furs," as used in the statute.

In this sense Congress has attempted a gradation of rates and conditions provided in the paragraph in so far as it speaks. First, fur skins dyed. This would be practically as they come from the huntsman, including dyeing. Second, fur skins dressed and dyed and prepared for use as materials for the furrier or other manufacturer of furs. Third, certain manufactures of furs, to wit, articles of wearing apparel partly or wholly manufactured.

The phrase, "including plates, linings, and crosses," part of the second material provision, lends weight to this conclusion in that it plainly and admittedly includes classes of furrier's materials.

It is contended by the appellants that the words "plates, linings, and crosses," as here used, are not words of extension, but words of specification, and that each is modified by the preceding words "further advanced than dressing and dyeing," and that, therefore, only those plates, linings, and crosses can be included within this provision for dutiable purposes which are dressed and dyed, and which in the condition as imported are ready for use as material.

Whether phrases such as these, introduced by the word "including," in tariff provisions, are words of extension or specification has

been the subject of previous consideration by the courts. The determining rule in such cases has been, in a great measure, ascertained by an examination of the history and context of the particular provisions.

In Hiller *et al. v.* United States (106 Fed. Rep., 73), the United States Circuit Court of Appeals for the Second Circuit considered such a phrase. The language was that of paragraph 339 of the tariff act of 1897, which read:

339. * * * Embroideries and all trimmings, *including* braids. * * *.

The court compared the provisions of the acts of 1894 and 1897 in regard to the classification of braids, and therefrom deduced the intent of Congress. The court held that because the word "braids" was omitted from the paragraph of the act of 1897, which corresponded to the paragraph of the act of 1894 levying a lower duty upon braids *eo nomine,* and so inserted it in paragraph 339 of the tariff act of 1897 levying a higher duty, the corresponding paragraph to which in the act of 1894 did not include "braids," indicated the intention upon the part of Congress to advance for dutiable purposes at the rate therein levied all braids in the act of 1897, and that hence the words were used in that paragraph as words of extension, and not specification limited by the language *ejusdem generis* in said paragraph 339.

Again, in Goldenberg Bros. & Co. *v.* United States (130 Fed. Rep., 108), a similar question arose with reference to the use of the words "articles of wearing apparel of every description, *including* neckties or neckwear" in paragraph 314 of the tariff act of 1897. The court there based its conclusion upon the presumed intent of Congress to levy an equal rate of duty upon articles of the same composition and character, to wit, cotton wearing apparel, and, the context so necessitating, held that the words "were intended as words of expansion rather than as words of restriction."

The history of this legislation leads to the same conclusion, and is instructive of the Congressional intent. There has been a persistent and successful effort upon the part of the importers under various preceding tariff acts to have plates, linings, and crosses, and materials used in the manufacture of furs sewed together temporarily with a view to holding the skins in place and protecting them, though known as "linings," etc., classified for dutiable purposes as "furs dressed on the skin but not made up into articles," which was substantially the language of the previous act. See G. A. 5457 (T. D. 24746). It was held, however, previous to the enactment of the act of 1909, that if these "linings" were permanently sewed into the forms adapted for the lining of garments they were dutiable as manufactures of furs. See Abstract 12633 (T. D. 27572). See also Mavtner *v.* United States (84 Fed. Rep., 155).

It was the evident purpose of Congress by paragraph 439 of the act of 1909 to distinguish between the completed article and several grades of materials entering into its composition, and to provide an intervening rate of duty upon materials prepared for the use of furriers and other manufacturers of furs higher than that upon the dressed skins, which rate had heretofore been construed the applicable one by the board of general appraisers, and at the same time lower than the rate provided upon the manufactures made from such materials.

Among the articles which had been specifically the subject of this contention were linings, which are in exactly the same category as the crosses and the plates, the subject of this litigation, and which in description and name correspond to the articles the subject of the stated litigation and construction. When Congress approached this subject of legislation, therefore, it was confronted by a construction of the law that these more advanced classes of materials, known by certain specific trade names, were classified at the same rate of duty with the less advanced classes, to wit, furs dressed on the skin. In this view we see no escape from the conclusion that by the use of the specific words "including plates, linings, and crosses," Congress was reaching out for these "linings," the subject of previous litigation, and kindred materials named, and applying thereto a specific rate of duty, and that in so doing it used the words as used in trade and hence as disclosed by this record as words of extension rather than specification.

We are, therefore, of the opinion that plates, linings, and crosses provided for in this paragraph, which are concededly well-known articles in the furriers' trade, and the trades of other manufacturers of furs, as these are admitted to be, are included within this provision of the law, whether or not dressed or dyed.

It seems to us fairly established by this record that they are materials prepared for the use of the furrier and other manufacturers of furs.

The testimony, and particularly the samples, in this case indicate that while the sewing is of flimsy character, nevertheless much time and labor has been devoted to the matching and cutting of the different pieces making up these importations. This undoubtedly involved the destruction of other parts of the skins so cut and in the samples before us resulted in perfectly matched and selected crosses and linings which the record shows are furriers' materials, well known by that name in the trade. These employments and services upon the particular merchandise would undoubtedly equalize, if not exceed, the cost of dyeing or dressing which would be necessary incidents to the other goods embraced within this material provision of the paragraph at the rate of 35 per cent ad valorem. There results from this construction, therefore, no lack in uniformity of duties.

Indeed, under the testimony in the record that when these linings and crosses go into ultimate use into the garment or rug that some rearrangement of the integral skins is necessary, which would undoubtedly be true according to the demands of the particular garment and the parts thereof to be made of the particular rug, the flimsy character of the sewing adds to that value as materials for the furrier's use, because the tearing apart becomes a labor of less cost and the operation less likely to injure the fur. So that it is not without reason that the flimsy character of the sewing itself conduces to the quality of the merchandise as a material prepared for use.

We are of the opinion that the merchandise was properly assessed for duty, and that the decision of the Board of General Appraisers should be *affirmed.*