(C. D. 1026)

C. S. OSBORNE & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 9, 1946)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The question submitted for our determination is whether certain upholsterers' pins are properly dutiable at the rate of 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for—

Articles or wares not specially provided for * * * composed wholly or in chief value of iron, steel * * * or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer * * *

as classified by the collector of customs, or at the rate of 35 per centum ad valorem under the provision in paragraph 350 of said act for—

Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins * * * all the foregoing not plated with gold or silver, and not commonly known as jewelry * * *

as claimed by the plaintiff.

The pins in controversy are represented by a sample marked "Exhibit 1" in evidence herein, and the precise nature or character thereof is not disputed. The exhibit measures about 3½ inches in length, has one end pointed and the other looped or bent in circular form, somewhat resembling the head of an eye-screw. It is neither ornamented nor plated with gold or silver, and is not commonly known as jewelry. Its only use is by upholsterers in fastening fabrics to the

table during the cutting operation and in holding them in place when covering furniture.

Plaintiff, in its brief, states that "the only question presented by this case is whether or not exhibit 1 has a solid head." After contending "that it does," plaintiff alleges that "the language of Par. 350 clearly indicates that it was the intent of Congress to include just such articles as Exhibit 1," because "Congress has specifically mentioned hair, safety, hat, bonnet and shawl pins as being included within the provisions for pins with solid heads." "This inclusion," plaintiff asserts, "is some indication of what Congress meant by a solid head." In other words, it is urged that "if a safety pin has a solid head within the meaning of this paragraph, clearly Exhibit 1 has."

The brief also mentions common or dressmakers' pins as covered by the phrase "Pins with solid heads," citing the trade agreement between the United States and the United Kingdom, effective January 1, 1939, 74 Treas. Dec. 253, T. D. 49753, wherein the rate of duty imposed by said provision was reduced from 35 to 30 per centum ad valorem on "common or dressmakers' pins." Apparently plaintiff perceives an analogy between such pins and those here in controversy. At any rate, our attention is invited to a detailed description of the manufacturing processes employed in making common or dressmakers' pins, as set forth in Knight's American Mechanical Dictionary, vol. II, page 1705. It appears therefrom that the heads of such pins are formed by flattening one end of the wire in a die. However, as above stated, the head of exhibit 1 is shaped by bending the end to form a circle. From the same page of the cited authority counsel quotes as follows:

Pins of peculiar forms and sizes are made for specific purposes. Among these may be mentioned diaper, dress, cloak, scarf, shawl pins, whose names indicate their duty.

In other words, plaintiff's view of the law is that—

* * * Congress intended to include within the provision for pins with solid heads all those pins whose heads were formed from a flattening, bending, or other manipulation of the wire itself.

And as the basis for such interpretation plaintiff reasons as follows:

The second part of Par. 350 provides for pins with heads of glass, paste, or fusible enamel. As the court well knows, a pin whose head is composed of glass may be either hollow or solid, but in either event it is a separate and distinct part of the pin, whereas the head of Exhibit 1, as in the case of the common or dressmakers' pin, is but a flattening or bending of the wire itself, just as the point is but a grinding or sharpening of the other end of the wire itself * * *

Defendant, on the other hand, takes the view that, inasmuch as it is at once apparent from a mere inspection of exhibit 1 that it has a *hollow* as distinguished from a *solid* head, and since it is obviously not a hair, safety, hat, bonnet, or shawl pin, it must be denied classifi-

cation under the provision in paragraph 350, *supra*, invoked herein by the plaintiff. Defendant further contends that since there exists no specific tariff provision for upholsterers' pins, they were properly relegated to the general provision in paragraph 397, *supra*, for articles not specially provided for, composed wholly or in chief value of metal, as classified by the collector. That conclusion, defendant asserts, seems inevitable in view of the legislative and judicial history of said paragraph 350 and its predecessors.

We are of the opinion that the contentions of the defendant are well founded. The Tariff Act of 1883 (par. 209) provided for "Pins, solid-head or other." The act of 1890 (par. 206) for—

Pins, metallic, solid-head or other, including hair-pins, safety-pins, and hat, bonnet, shawl, and belt pins  *  *  *

The act of 1894 (par. 170) for—

Pins, metallic, including pins with solid or glass heads, hair pins, safety pins, and hat, bonnet, shawl, and belt pins, not commercially known as jewelry  *  *  *

The act of 1897 (par. 188) for—

Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins; any of the foregoing composed wholly of brass, copper, iron, steel, or other base metal, not plated, and not commonly known as jewelry  *  *  *

The act of 1909 (par. 188) for—

Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins; any of the foregoing composed wholly of brass, copper, iron, steel, or other base metal, not plated with gold or silver, and not commonly known as jewelry  *  *  *

The last-quoted language was substantially reenacted in the tariff acts of 1913, 1922, and 1930, except that in the last two acts a provision was added covering pins with heads of glass, paste, or fusible enamel, a classification which is not here in issue.

Defendant contends, and we think correctly, that said legislative history is indicative of a consistent purpose on the part of Congress to restrict, rather than to enlarge, the scope of the provision for pins with solid heads; and that whenever any change in that policy was made whereby the provision was extended to include some particular class of pins, that intention was clearly manifested by appropriate, specific, or *eo nomine* designations.

In this connection, we deem highly important the decision of the Supreme Court of the United States in *Robertson* v. *Rosenthal*, 132 U. S. 460, decided in 1889. The articles in that case were described by the court as "ordinary headless hair-pins, made of steel wire and iron wire," and the question submitted was whether they were dutiable as "pins, solid-head or other." Referring to prior legislation on the subject, the court mentioned these tariff provisions: In the act of

1862 (12 Stat. 555, 557) for "pins, solid-head or other"; in the act of 1870 (16 Stat. 264) for "hair-pins made of iron wire"; in section 2504, title XXXIII, Revised Statutes of 1874, for "hair-pins, made of iron wire" and for "pins, solid-head or other"; and in section 2502, title XXXIII, Revised Statutes, as enacted by the act of March 3, 1883 (22 Stat. 501), for "pins, solid-head or other," and also for—

Manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel   *   *   *   or any other metal, and whether partly or wholly manufactured.

The Supreme Court then observed:

It will be perceived that although hair-pins are not mentioned *eo nomine*, this last paragraph covers iron and steel hair-pins, as was ruled as to the latter by the department in 1875, in the construction and application of similar language.

The court then proceeded to express its conclusion on the question before it as follows:

Inasmuch as Congress, for the thirteen years prior to 1883, treated hair-pins for revenue purposes as a distinct article from "pins, solid-head or other," we consider it unreasonable to conclude that the legislation of 1883 was intended to do away with a distinction manifestly regarded as inherent in the thing itself. ·

In short, it is doubtful if it could ever have been properly held that hair-pins were *ejusdem generis* with the pins referred to in the tariff acts, but if this could have been so prior to 1870, we are of opinion that at that time Congress assigned them to a class by themselves, because essentially *sui generis*, and, therefore, that their not being specifically enumerated in 1883 did not relegate them to the category of "pins, solid-head or other," as ingeniously argued by counsel.

In other words, the Supreme Court held that the lower court should have instructed the jury to find for the collector of customs who had classified the hairpins there in question under the general provision for articles or wares not specially provided for, composed wholly or in chief value of iron, steel, or other metal.

It is worthy of note that in the first tariff act enacted subsequent to the rendition of the decision in the *Robertson* case, *supra*, namely, the Tariff Act of 1890 (26 Stat. 567), in paragraph 206 thereof—which was the pin paragraph—*eo nomine* provision was made for "hairpins," as hereinbefore indicated; and that the language of said paragraph (with certain exceptions not here material) has been continued in every subsequent tariff act to the present time.

If, as observed by the Supreme Court in the *Robertson* case, *supra*, "it is doubtful if it could ever have been properly held that hair-pins were *ejusdem generis* with the pins referred to in the tariff acts," prior to the act of 1883, it would seem logically to follow that upholsterers' pins, such as those here in controversy, would not, in view of the context of paragraph 350, *supra*, properly be regarded as *ejusdem generis* with any of the pins named therein.

Bearing in mind that it required specific and *eo nomine* designations to associate hairpins with other pins for duty purposes, as indicated

in the act of 1890, and every intervening act to and including that of 1930, no sound reason has been advanced to justify the classification of upholsterers' pins under the provision for "Pins with solid heads * * * including hair, safety, hat, bonnet, and shawl pins," as claimed by the plaintiff. Of course, that contention is predicated on the theory that in naming those five groups of pins, Congress indicated its conception of what constituted pins with solid heads. However, the view of the defendant is, that the named groups cover "additional kinds of pins" to those embraced by the phrase "Pins with solid heads." Hence, as stated in its brief, "it is defendant's contention that the words following the word 'including' are words of extension."

A similar question arose in *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T. D. 31681, wherein our appellate court construed a provision in paragraph 439 of the Tariff Act of 1909 for—

* * * manufactures of furs, further advanced than dressing and dyeing, when prepared for use as material, including plates, linings, and crosses * * *

In the course of its opinion the court said:

Whether phrases such as these, introduced by the word "including," in tariff provisions, are words of extension or specification has been the subject of previous consideration by the courts. The determining rule in such cases has been, in a great measure, ascertained by an examination of the history and context of the particular provisions.

The court then discussed two analogous cases as follows:

In Hiller et al. *v.* United States (106 Fed. Rep., 73), the United States Circuit Court of Appeals for the Second Circuit considered such a phrase. The language was that of paragraph 339 of the tariff act of 1897, which read: ·

339. * * * Embroideries and all trimmings, *including* braids. * * * [Italics quoted.]

The court compared the provisions of the acts of 1894 and 1897 in regard to the classification of braids, and therefrom deduced the intent of Congress. The court held that because the word "braids" was omitted from the paragraph of the act of 1897, which corresponded to the paragraph of the act of 1894 levying a lower duty upon braids *eo nomine,* and so inserted it in paragraph 339 of tariff act of 1897 levying a higher duty, the corresponding paragraph to which in the act of 1894 did not include "braids," indicated the intention upon the part of Congress to advance for dutiable purposes at the rate therein levied all braids in the act of 1897, and that hence the words were used in that paragraph as words of extension, and not specification limited by the language *ejusdem generis* in said paragraph 339.

Again, in Goldenberg Bros. & Co. *v.* United States (130 Fed. Rep., 108), a similar question arose with reference to the use of the words "articles of wearing apparel of every description, *including* neckties or neckwear" in paragraph 314 of the tariff act of 1897. The court there based its conclusion upon the presumed intent of Congress to levy an equal rate of duty upon articles of the same composition and character, to wit, cotton wearing apparel, and, the context so necessitating, held that the words "were intended as words of expansion rather than as words of restriction."

After discussing the subject and the facts and law applicable thereto, the court in the *Carlowitz* case, *supra*, concluded that—

\* \* \* When Congress approached this subject of legislation, therefore, it was confronted by a construction of the law that these more advanced classes of materials, known by certain specific trade names, were classified at the same rate of duty with the less advanced classes, to wit, furs dressed on the skin. In this view we see no escape from the conclusion that by the use of the specific words "including plates, linings, and crosses," Congress was reaching out for these "linings," the subject of previous litigation, and kindred materials named, and applying thereto a specific rate of duty, and that in so doing it used the words as used in trade and hence as disclosed by this record as words of extension rather than specification.

Also in point herein is *Martin & Bechtold* v. *United States*, 18 C. C. P. A. (Customs) 363, T. D. 44615, wherein the court passed upon the tariff status of certain lithographic transfer paper used to transfer a drawing or design from lithographic stone to metal blanks. It was classified by the collector under paragraph 1305 of the Tariff Act of 1922 as paper with coated surface or surfaces not specially provided for. It was claimed to be dutiable under a provision in the same paragraph for "gummed papers, not specially provided for, including simplex decalcomania paper not printed." In affirming our decision (*Martin & Bechtold* v. *United States*, 56 Treas. Dec. 822, Abstract 9735), which sustained the collector's classification, the appellate court said:

From our study of the record and the briefs, together with the legislative history of paragraph 1305, we are satisfied that the Congress did not intend to include in the provision for gummed papers lithographic transfer paper, and that the Congress recognized that, unless it specifically provided, as it did, that decalcomania paper not printed should bear the same rate of duty as gummed papers, it would not be included under that provision; and that, by the language "including simplex decalcomania paper not printed," the Congress intended to extend the provisions for gummed papers, not specially provided for, to include simplex decalcomania paper at the same rate of duty. We are of opinion, therefore, that the clause "including simplex decalcomania paper not printed" was intended to be considered as words of extension and not of definition. \* \* \*

The same tribunal, in interpreting the meaning of the provision in paragraph 359 of the Tariff Act of 1930 for—

\* \* \* dental instruments, and parts thereof, including hypodermic needles, hypodermic syringes, and forceps, wholly or in part of iron, steel, copper, brass, nickel, aluminum, or other metal \* \* \*

in the case of *United States* v. *Kimball Dental Mfg. Co.*, 19 C. C. P. A. (Customs) 353, T. D. 45501, said:

As we view it, the term "including," as used in said paragraph 359, is not a word of limitation but rather one of extension, and is used there not to exclude dental instruments not named *eo nomine*, but to make sure of the inclusion of the specific items that are there given an *eo nomine* designation.

In *Bloomingdale Bros. et al.* v. *United States*, 3 Ct. Cust. Appls. 204, T. D. 32530, the merchandise consisted of hairpins and safety pins,

plated, lacquered, or enameled. Duty was levied thereon under paragraph 193 of the Tariff Act of 1897 as articles of metal not specially provided for. The plaintiffs invoked paragraph 188 of said act which provided for—

Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins; any of the foregoing composed wholly of brass, copper, iron, steel, or other base metal, not plated, and not commonly known as jewelry, thirty-five per centum ad valorem.

It appears that the Board of General Appraisers (now this court) in its decision in that case (17 Treas. Dec. 317, Abstract 21009, T. D. 29690) sustained the contention of the plaintiffs as to the lacquered pins, but overruled the protest in all other respects. In affirming that decision, the appellate court in the Bloomingdale. case, supra, said:

\* \* \* Pins are mentioned eo nomine for the first time in the tariff act of 1816, which imposed a duty of 20 per cent ad valorem on "pins \* \* \* of all kinds." This provision became "pins, solid head or other," in the tariff act of 1862, which levied on that class of merchandise a duty of 5 per cent ad valorem in addition to that previously imposed. Hairpins eo nomine made their first appearance in the tariff act of 1870, which laid a duty thereon of 50 per cent ad valorem. The provision for hairpins was not repeated, however, in the tariff act of 1883, and in consequence it was held that Congress having once made a distinction between hairpins and pins, hairpins could not be assessed for duty under the designation for "pins, solid head or other," which had been carried bodily from the act of 1862 into that of 1883, although it seems that mourning pins, hatpins, bonnet pins, shawl pins, and safety pins might be so assessed. Robertson v. Rosenthal (132 U. S., 460, 464); Dieckerhoff v. Robertson (44 Fed. Rep., 160). Apparently, as a result of these decisions and to set at rest, as far as might be, any doubt as to what pins should bear the 30 per cent rate, the provision for "pins, solid head or other," which has stood for 28 years or more, was changed by the tariff act of 1890 so as to read:

Pins, metallic, solid head or other, including hairpins, safety pins, and hat, bonnet, shawl, and belt pins, thirty per centum ad valorem.

It would seem that the Congress changed the phraseology of paragraph 206 of the Tariff Act of 1890 from that of paragraph 209 of the Tariff Act of 1883 to include metallic hairpins which had been held in the Robertson v. Rosenthal case, supra, to be classifiable as articles not specially provided for composed in chief value of metal, "because essentially sui generis." There is nothing in any subsequent tariff act which would suggest the propriety of applying any different statutory construction so far as it may relate to the various types of pins provided for eo nomine in the pin paragraph. In other words, the rule of ejusdem generis is just as inapplicable to the present paragraph 350 as it was to the corresponding predecessor paragraphs in the various tariff acts enacted from 1883 to 1930.

In the light of the legislative and judicial history of paragraph 350, supra, it would seem that the only pins which properly may be added

to those having solid heads are those represented by the several groups named therein. Of course, this conclusion precludes the classification under that paragraph of the upholsterers' pins in controversy which, as before stated, have *hollow* as distinguished from *solid* heads, and do not belong to any of the classes of pins *eo nomine* designated therein.

Upon the facts established by the record, and the law applicable thereto, we hold that the collector of customs has correctly classified the upholsterers' pins in controversy as dutiable at the rate of 45 per centum ad valorem under the provision in paragraph 397, *supra*, for articles or wares not specially provided for, composed in chief value of metal. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed.

Judgment will be entered accordingly.