(C.D. 2088)

A. N. DERINGER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 1, 1959)

*Barnes, Richardson & Colburn* (*Joseph Schwartz, E. Thomas Honey,* and *Norman C. Schwartz* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Richard E. FitzGibbon,* trial attorneys), for the defendant.

Before Oliver, Mollison, and Wilson, Judges

Wilson, Judge: The merchandise in the case at bar, invoiced as "Jap Mink Waste," was classified for duty under paragraph 1519(a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at the rate of 15 per centum ad valorem under the provision therein for "Dressed furs and dressed fur skins * * * Other: * * * dyed." Plaintiff claims the merchandise properly classifiable under paragraph 1555 of the act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 4 per centum ad valorem as "Waste, not specially provided for."

As representative of the imported merchandise, a piece of fur cutting was received in evidence as plaintiff's exhibit 1 (R. 3).

The only testimony in the case was that given by Mr. Max Herzig, president of the company which shipped the goods. He stated that his concern is in the business of purchasing from furriers fur cuttings which are pieces of material that are cut off in the process of making wearing apparel. Some of such cuttings are fit for sewing purposes, while others are useful only as waste material (R. 4–5). It appears that, after the purchase of fur cuttings, such as plaintiff's exhibit 1, the importer has these pieces bundled in thousand-pound lots. These lots are sold to the fur waste trade in the United States (R. 7).

The record further discloses that, after importation, fur cuttings, such as plaintiff's exhibit 1, are sent to a plant where they are put through a boiling operation, in which the cuttings are placed in a machine which chemically separates the wool or hair from the leather or hide, and in which process the leather is destroyed. After completion of the boiling operation, the hair comes back in small bundles. The resultant product is sold to mills where it is made into fur felt (R. 10–11).

Mr. Herzig testified that, based upon his experience in the fur business, Japanese mink cuttings such as those imported are not utilized for fur purposes and are sold by him only to be used in boiling operations, such as above related, for "hatters' purposes," and that the merchandise in question has no other uses. He further stated that he had never sold merchandise, such as that represented by plaintiff's exhibit 1, for any purpose other than that indicated by him above (R. 13–14).

In support of the claimed classification, plaintiff maintains specifically that the imported fur cuttings are unsuitable for sewing or furriers' purposes and that, accordingly, they are not dressed and dyed furs or fur skins and should not thus be classified as such.

The question as to what constitutes furs or fur skins for dutiable purposes has been previously passed upon in a number of cases by this and our appellate court. In *F. L. Kraemer & Co.* v. *United States*, 2 Cust. Ct. 716, Abstract 41389, the court construed the same paragraphs of the Tariff Act of 1930 as here in issue. The merchandise there consisted of pieces of fur which the manufacturers of garments made of fur sliced off to even up the skins. Upon a record which established that the merchandise in question was not suitable or adapted to use for the purposes for which dressed fur skins are usually used and that it consisted merely of waste fit only for remanufacture into hatters' fur, plaintiff's claim therein for classification of the merchandise as waste under paragraph 1555, *supra*, was sustained. To the same effect was the holding of the court in *Danbury & Bethel Fur Co.* v. *United States*, 8 Cust. Ct. 541, Abstract 47262.

In *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T.D. 31681, and *Ayres, Bridges & Co. et al.* v. *United States*, 8 Ct. Cust. Appls. 87, T.D. 37201, the court, in construing predecessor paragraphs of the tariff act relative to furs and fur skins, held in effect that dressed furs and dressed fur skins are only such as are suitable for furriers' purposes. The court, in the *Ayres, Bridges* case, *supra*, in holding that sheepskins, when used as ordinary fur skins are used, are dutiable as furs dressed on the skin (paragraph 348 of the Tariff Act of 1913), at page 95, stated:

Indeed, we have little hesitation in saying that in their common meaning the terms "fur," "furs," and "furs dressed on the skin" include the dressed skins of animals of the sheep kind when such skins are in fact designed and wholly or chiefly devoted to the manufacture of furs or fur articles such as coats, muffs, neck pieces, etc. * * *

The uncontradicted testimony in the case at bar establishes, in our opinion, that the involved merchandise is properly classifiable as claimed. It appears, as testified to by plaintiff's witness, that these

particular fur cuttings are not suitable for the manufacture of fur garments or fur articles and that they are put to an entirely different use than the fur skins from which they were separated. As such, they are not embraced within the tariff designation dressed furs or dressed fur skins. See, in this connection, *Patton* v. *United States*, 159 U.S. 500, and *Latimer* v. *United States*, 223 U.S. 501. Accordingly, the involved merchandise, consisting merely of the waste clippings or cuttings of fur cut off in the process of manufacture and which "have not the quality or utility either of the finished product or of the raw material" (*Latimer* case, *supra*), is properly classifiable under paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at the rate of 4 per centum ad valorem as "Waste, not specially provided for," as claimed, and we so hold.

Judgment will be entered accordingly.