UNITED STATES *v.* BEIERLE (No. 269).[1]

BARETTES OF BASE METAL SET WITH IMITATION JET, NOT JEWELRY.

On a review of the interpretations, both legislative and judicial, there being an absence of any evidence going to show a commercial designation of the commodity and the fact appearing that the relevant clause in the tariff act of 1909 was placed there after a like clause in the tariff act of 1897 had received an authoritative interpretation, similar to the one here now given, barettes made of base metal and set with imitation jet are not dutiable as "jewelry," but are dutiable as manufactures of paste under paragraph 109, tariff act of 1909.

United States Court of Customs Appeals, April 10, 1911.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 7019 (T. D. 30612).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellees.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal as it reaches this court involves the dutiable classification under the tariff law of 1909 of barettes, composed of base metal set with imitation jet.

When the case was before the board there were three classes of merchandise involved.

First, hat pins having tops set with imitation precious stones and composed of glass or paste *other than imitation jet.*

These were assessed by the collector as glass, cut, at 60 per cent ad valorem. The board held that they were properly dutiable at 45 per cent ad valorem under the appropriate provision of the tariff law on authority of United States *v.* New York Merchandise Co. (167 Fed. Rep., 684). The appeal of the Government as to this class of merchandise was expressly abandoned in the briefs and at the hearing.

The third class was hat pins having tops set with imitation of precious stones composed of glass or paste *other than imitation jet,* the same being articles of jewelry or personal adornment costing more than 20 cents per dozen pieces, and were held by the board to be

---

[1] Reported in T. D. 31506 (20 Treas. Dec., 749).

dutiable at the specific rates, varying according to the value, and 25 per cent ad valorem under paragraph 448.    There was no appeal from the decision of the board as to this class of merchandise.

The question here is the dutiable classification of the barettes.

The Government contends that they are properly dutiable as "articles commonly or commercially known as jewelry," under the provisions of the last part of paragraph 448 of the tariff act of 1909, which reads as follows:

448. * * * all articles *commonly or commercially known as jewelry,* or parts thereof, finished or unfinished, *including chain, mesh, and mesh bags and purses"* (,) .*"composed of gold or platinum,* whether set or not set with diamonds, pearls, cameos, coral, or other precious or semiprecious stones, or imitations thereof, sixty per centum ad valorem.

It is maintained by the importers, and it was held by the board, that such merchandise is not properly dutiable under the provisions of this paragraph, but as manufactures of paste under paragraph 109 of said act.    The board made no finding as to whether or not the articles were commonly or commercially known as jewelry, but based their decision upon the proposition that, reading the paragraph from all four corners without regard to punctuation, and considering the same in conjunction with paragraphs of the law *in pari materia,* it was the manifest purpose of the Congress to have enacted as though there were a comma after the word "purses," and that in consequence the whole paragraph was by the words "composed of gold or platinum" confined to merchandise of that composition.    As this importation was not composed of gold or platinum it would by that construction be excluded from the paragraph.

The Government in its brief makes the assertion that it is conceded on all hands that the articles in question, barettes, are known "commercially as jewelry."    The appellee refused to join in this concession, and the board made no finding of fact upon that point.    There was no evidence introduced at the hearing before the board by either appellant or the appellees.

Without expressing an opinion upon the point upon which the board based its decision, we think that the point made by appellees before this court that the history of legislation upon the subject and the uniform interpretation given similar provisions in previous tariff acts in the presence of this legislation is, in its results, conclusive of the case.

The uniform course of legislation and judicial interpretation from and including the tariff act of 1846 to date indicates that both the Congress and the courts have regarded articles made of imitation jet and base metal as something, for tariff purposes at least, different from jewelry, and have not deemed them included within the term jewelry as used in the customs revenue laws.    When, therefore, the Congress in paragraph 448 legislated with reference to jewelry and

articles commonly and commercially known as jewelry they used those terms in the same sense indicated by the course of legislation of years previous, *and in accordance with the judicial interpretation thereof last previously promulgated.*

What then was this course of legislation and decision at the time of the enactment of the tariff act of 1909?

The tariff act of July 30, 1846 (9 Stat., ch. 74, p. 45), provided:

SCHEDULE C. * * * jewelry, real or imitation; jet and manufactures of jet and imitation thereof; * * *

In the tariff act of March 2, 1861 (12 Stat., ch. 68, sec. 22), it was enacted:

SEC. 22. * * * Jet, and manufactures of jet, and imitations thereof; * * *

By section 21 provision was made in this wise:

SEC. 21. * * * diamonds, * * * and other precious stones, when not set, a duty of five per centum ad valorem * * * ; when set in gold, silver or other metal, or on imitations thereof, and all other jewelry, twenty-five per centum ad valorem. * * *

The tariff act of July 14, 1862 (12 Stat., ch. 163, sec. 13), used this language:

SEC. 13. * * * Jet, and manufactures of jet, and imitations thereof; * * *

This provision increased the duties levied upon jet and manufactures of jet and imitations thereof, as previously provided in the tariff act of 1861, and left the duty upon jewelry the same as previously provided. Here is the clearest manifestation of the intention of Congress to deal with the articles as separate and distinct commodities in the tariff sense.

And, later, when the provisions in force were codified in the Revised Statutes of the United States, they read as section 2504, as follows:

SCHEDULE M. Jet, manufactures and imitations of: * * *
SCHEDULE M. Precious stones and jewelry. * * *

Thus seems to have continued the statutory description through the many changes of the tariff law down to the tariff act of March 3, 1883 (22 Stat., ch. 121). It was therein provided, as follows:

SCHEDULE N. * * * . Jet, manufactures and imitations of. * * *
SCHEDULE N. * * * Jewelry of all kinds. * * *

It clearly appears by these provisions that from 1846 down to 1890, the date of the tariff act following that of 1883, a period of 44 years, that Congress maintained in plain and unmistakable terms that it contemplated for dutiable purposes jet and imitation jet, and jet and imitation jet articles as separate and distinct tariff subjects from jewelry.

The tariff act of 1890 by paragraph 452 provided:

452. Jewelry: All articles, not elsewhere specially provided for in this act composed of precious metals or imitations thereof, whether set with coral, jet, or pearls, or with diamonds, rubies, cameos, or other precious stones, or imitations thereof, or otherwise, *and which shall be known commercially as "jewelry,"* and cameos in frames, fifty per centum ad valorem.

And in paragraph 459 of that act it was provided:

459. Manufactures of * * * jet, paste, * * * or of which these substances * * * is the component material of chief value, not specially provided for in this act. * * *

By paragraph 452 of this act only those articles composed of jet or imitations thereof are classified under the title jewelry, "which shall be known commercially as jewelry." The provision assumes that there are articles of jet, or articles made of imitation jet, which are not known commercially as jewelry. Ornaments of such not within the strict category of jewelry might well have come under that class.

The further provision for manufactures in chief value of jet, or imitation thereof, also indicates, when speaking of the included merchandise, there were articles of jet not known as jewelry. So it may be said of the tariff act of 1890 that while Congress expressly legislated for a class of imitation jet articles *which were known as jewelry*, it impliedly in that paragraph, and expressly in paragraph 459 of the act, recognized the existence of jet and imitation jet articles which were not known as jewelry.

In the tariff act of 1897 articles of jet or imitation jet, or even those commercially or commonly known as such, were not expressly included within the paragraph for jewelry. That paragraph was as follows:

434. Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this act, including precious stones set, pearls set or strung, and cameos in frames, sixty per centum ad valorem.

Paragraph 115 of that act provided:

115. Manufactures of * * * jet, * * * not specially provided for in this act, fifty per centum ad valorem.

It was also provided as follows:

112. * * * and all glass or manufactures of glass or paste, or of which glass or paste is the component material of chief value, not specially provided for in this act, forty-five per centum ad valorem.

A decision construing the several paragraphs of the tariff act of 1897 as to imitation jet articles was announced in Bader *v.* United States (116 Fed. Rep., 541), a decision of the Circuit Court for the Southern District of New York. The imitation jet there was referred to as black goods. The court said:

The court is unable, however, to find sufficient proof to sustain the finding of the board as to the so-called "black goods" which appear to be described in the paragraphs numbered 9 and 10 of the decision. The testimony as to these goods seems to be practically undisputed that they are not jewelry and were not commonly known as jewelry.

This decision was rendered in June, 1902.

Later, and in 1905, the Circuit Court of Appeals for the Second Circuit, having under consideration the same paragraph, in United States *v.* Schiff (139 Fed. Rep., 549), said:

We do not deem it important to attempt a comprehensive definition of the word "jewelry" or the phrase "articles commonly known as jewelry." The only relevant question now before the court is, were the articles in controversy, at the date of

importation, commonly known as jewelry? * * * The question is one of fact and we see no reason to disturb the finding of the board; (the board found that they were not jewelry or commonly known as jewelry) * * *. The merchandise in question consists of cheap flimsy ornaments in the form of * * *, made wholly of base metal, or of *such metal set with imitation jet* or imitation precious stones made of glass and known as paste.'' * * *

In May, 1906, G. A. 6374 (T. D. 27382), the board held in conformity with the Bader decision that ornaments composed of metal and paste in imitation of jet were not included within paragraph 434 of the tariff act of 1897 as jewelry or articles commonly known as jewelry, but were properly dutiable as manufactures of paste under paragraph 112 of that act.

This was the status of the legislative and judicial interpretation by the highest invoked authority and in the latest expressions of all competent authorities when the tariff act of 1909 and the provision before the court was enacted.

We think that it may be unqualifiedly said that from 1846 to the time of the enactment of the tariff law of 1909 all legislation upon the subject uniformly observed the distinction for tariff purposes between articles in imitation of jet and articles of jewelry, or commonly known as jewelry, as separate and distinct entities for dutiable purposes.

Paragraph 109 of the tariff act of 1909 provides for ''manufactures of glass or paste or of which glass or paste is the component material of chief value.''

That the dropping of the provision for imitation jet, in specific terms, in subsequent tariff acts did not indicate that Congress intended to do away with the well-established distinction between imitation jet articles and jewelry, but might indicate a purpose to continue that distinction, and to provide for them in some other more comprehensive provision of the tariff law is a well-established principle of interpretation in customs law.    Robertson *v.* Rosenthal (132 U. S., 460); Garrison Wright *v.* United States (127 Fed. Rep., 1022).

That this results in a more uniform rate of duties upon goods of substantially the same material, quality, and use lends strength to the conclusion.

In view of this long and consistent line of legislation and judicial interpretation, and in the absence of any testimony whatsoever in this record going to show, or finding by the board, that the articles here under consideration, which are in chief value of imitation jet, were by the trade and commerce of the United States uniformly and commonly known as jewelry; and in view of the fact that the provision in the tariff act of 1909 was enacted when precisely the contrary interpretation had been placed upon the provision *in pari materia* of the act of 1897, and in substantially the same words, no other conclusion can be reached by this court.

In this view the other points raised in the case are of unnecessary determination.

*Affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.