## UNITED STATES *v.* SHELDON & Co. (No. 310).[1]

IMITATION JET GOODS NOT MANUFACTURES OF GLASS.

Technically "jet goods" are not, of course, imitation jet, but where the record discloses the importer, the collector, and the Board of General Appraisers all considered the importation an imitation jet it could not be properly assessed as jet, and was rightly held to be dutiable as imitation jet under paragraph 109, tariff.act of 1909.—United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D. 31506).

### United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23464 (T. D. 30691). [Affirmed.]

William K. Payne, Deputy Assistant Attorney General (Leland N. Wood on the brief), for the United States.

Comstock & Washburn (Albert H. Washburn and George J. Puckhafer, of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers classifying an importation designated as jet bars, brooches, and earrings under paragraph 109 of the tariff act of 1909. The authorities relied upon by the board for this classification were G. A. 6995

---

[1] Reported in T. D. 32034 (21 Treas. Dec., 560).

(T. D. 30444) and G. A. 7119 (T. D. 30612), the latter being Beierle's case, which was, on appeal to this court, affirmed in T. D. 31506 (1 Ct. Cust. Appls., 457).

It is sought to differentiate the present case from Beierle's case, as it is said that the finding in the present case shows the articles to be jet and not imitation jet, as was the case in Beierle's protest.

The first inquiry is: In what sense is the word "jet" used in this record? Technically, it must be said that jet goods are not imitation jet goods, but if in the four corners of the record it is made evident that the collector, the importer, and the board all understood the goods to be and treated them as imitation jet, it would be manifestly unjust to now depart from this understanding and reverse the case and give the word a technical meaning as distinguished from a meaning which attaches to it in common use.

It needs no evidence to show that imitation-jet goods are often referred to as jet, and that the distinction is seldom nicely made in common speech. This record very clearly indicates that it was in the ordinary sense that the word "jet" was employed by all parties concerned in this importation. It is true they were entered as jet goods; but they were entered in connection with other goods which were admittedly imitation jet, and were, while designated the same as were these goods, returned by the collector as cut glass or as manufactures of glass.

The collector gives as his authority for classifying these goods Abstract 6822 (T. D. 26417) and Abstract 7181 (T. D. 26559).

In the first case the goods are referred to as jet ornaments, cut glass. The memorandum reads: "The merchandise consisted of jet ornaments with faceted surfaces produced by the process of cutting, and was held to have been properly classified as cut glass."

In Abstract 7181 (T. D. 26559) it is stated that the merchandise consisted of jet millinery ornaments, "which the board found to be composed of molded glass, cut glass, and metal, cut glass being the component material of chief value."

It is manifest by referring to these decisions that the collector intended to characterize these goods as falling within the description given in the abstracts referred to. Again, in the decisions cited by the Board of General Appraisers the articles in question were cut glass or imitation jet.

Furthermore, the invoice value of the goods in suit shows them to be worth but from 4 to 7 cents each, which is inconsistent with the well-understood rarity of real jet, and which leads to the inference that the merchandise was not, in fact, real jet.

We find, therefore, that the importer evidently did not intend to enter these goods as real jet; that the collector did not understand them to be real jet; and that the board in passing upon the importation did not understand that it was dealing with real jet. We are

irresistibly led to the conclusion that the article we are dealing with is imitation jet, and that the whole record read together clearly indicates this. This being so, the case is ruled by United States *v.* Beierle, *supra.*

The decision of the board is *affirmed.*