AMERICAN BEAD CO. *v.* UNITED STATES (No. 1601).   WOLFF & CO. *v.* UNITED STATES (No. 1619).[1]

1. APPRAISEMENT.
   An appraisement is *in no sense a classification.*

2. EVIDENCE—PRESUMPTION—USAGE.
   Presumptively, commercial and common usage are the same.

3. APPRAISER'S OPINIONS AND LEGAL CONCLUSIONS.
   The function of the appraiser is to find facts, and his opinions and legal conclusions are not binding.

4. EVIDENCE—STIPULATION OF FACT.
   Parties' stipulations of fact bind the court.

5. JEWELRY—STARE DECISIS.
   That bead necklaces are not necessarily jewelry and that articles of personal adornment only are not necessarily jewelry are *stare decisis.*

6. AMBER—TARIFF ACTS OF 1909 AND 1913.
   The jewelry paragraph (448), tariff act of 1909, embraced imitation amber; the jewelry paragraph (356), tariff act of 1913, does not.

United States Court of Customs Appeals, May 23, 1916.

APPLICATIONS for rehearing, decision in 1601 rendered March 9, 1916 (7 Ct. Cust. Appls., 18; T. D. 36259); and that in 1619, March 28, 1916 (7 Ct. Cust. Appls., 156; T. D. 36463).

[Denied.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

*Per curiam:* The case of H. Wolff & Co. *v.* United States, *supra,* having been decided by citation only of earlier decisions of the court deemed precisely controlling, and a petition for reargument having been filed, the court deems more extended observations appropriate. That petition for rehearing lays particular stress upon the appraiser's report upon the protest, wherein it is stated that the articles "are *in the opinion* of this office *commercially* known as jewelry." This is followed by the claim of the Government that this was a finding by the appraiser which was binding upon the Board of General Appraisers.

[1] Reported in T. D. 36465 (30 Treas. Dec., 967).

The original and only appraisements of these goods are stamped upon the invoices, as required by the Customs Regulations of 1908 (arts. 1514 and 1515), which, in so far as pertinent, read:

ART. 1514. *Duties generally.*— * * * In order to assist the collector in the assessment of duty, the appraiser describes the merchandise in such terms as will enable the collector to classify the same for duty. * * *

ART. 1515. *Classification a function of collectors.*—It is *in no case* the function of appraising officers to classify imported merchandise, that duty being vested by law in the collector of customs, the chief business of the appraiser under the statute being the ascertainment of the market value of imported merchandise.

In this case the notations upon the invoices uniformly were:

Bead necklaces or chains. As jewelry, 60 per cent—356—F.

The letter "F" is, of course, the examiner's initial. On the reverse of the invoice are notations as follows:

Merchandise as noted. Date of return, 12/3/14. * * * Assistant appraiser, Fred Kuenzli. Approved, John K. Sague, appraiser.

The invoice is stamped "Liquidated March 17, 1915." "Increase paid Mar. 19, 1915." The *appraisement* in this case, therefore, was made on December 3, 1914, and the *decision* of the collector on March 17, 1915.

It is equally pertinent that the appraiser, in accordance with the regulations, *advised* the collector that the classification of this merchandise should be "as jewelry," without any advice whatsoever as to whether it was either or both commonly or commercially known as jewelry. Nor can the appraiser amend this return as to value once it is lodged with the collector save for clerical error. Customs Regulations of 1908 (art. 864).

On April 9, 1915, the protest was filed against this decision of the collector made March 17, 1915. Thereupon the protest against the decision of the collector, based upon the aforesaid appraisement made December 3, 1914, was, under the regulations, forwarded to the appraiser for his report. On June 12, 1915, the report upon this protest was made by the appraiser to the collector:

The merchandise consists of necklaces or neck chains composed in chief value of beads, valued over 20 cents per dozen pieces. *Being articles of personal adornment,* they are, *in the opinion* of this office, *commercially* known as jewelry and were so returned, at 60 per cent ad valorem, under paragraph 356, act of 1913, in accordance with department's instructions in T. D. 34511.

> Respectfully,
>
> JOHN K. SAGUE, *Appraiser.*

Thereupon, in accordance with the Customs Regulations of 1908, article 1074, the collector forwarded all of the papers with his legally required *letter of transmittal* to the Board of General Appraisers, reciting therein:

Report of the collector—June 19, 1915. Respectfully referred to the Board of United States General Appraisers for decision.

The merchandise referred to herein was assessed with duty in accordance with the advisory classification returned by the appraiser *on the invoice*, and more particularly described in the special report herewith. * * *

DUDLEY FIELD MALONE, *Collector.*

Wherefore, it is apparent that at the time of the decision of the collector there was no classification or attempted classification, advisory or otherwise, before him by the appraiser that this merchandise was commercially and not commonly known as jewelry. A literal examination of the letters of transmittal and reports submitted without reference to the invoices shows this to be true. There was an advisory classification that they were "jewelry," which included both that commonly or commercially so known. The collector reported to the board long after his decision had been made, under the regulations requiring him to give the "reason" for his decision, article 1074, *supra*, that the merchandise was assessed with duty in accordance with the advisory classification returned by the appraiser "on the invoice," and more particularly *described* in the special report herewith. The collector acted upon the advisory classification *upon the invoice* and not upon the answer to the protest made long after his decision. He stated that the goods were more particularly "described" in the special report of the appraiser, but that description is not had by that part of his report stating that they were "commercially known as jewelry," but by that part thereof relating to their physical characteristics, to wit, "necklaces or neck chains composed in chief value of beads, valued over 20 cents per dozen pieces." If we ask to describe an article of personal adornment, we are afforded no light by a statement that it is commonly or commercially known as jewelry, but we are enlightened by the reply that it consists of "necklaces or neck chains composed in chief value of beads, valued over 20 cents per dozen pieces."

The remaining portion of the appraiser's answer to the protest does not consist of a "description" of the goods, but assigns his *reason for the appraisement* long after the appraisement was made and after it was acted upon by the collector. Nor does this further part of the answer to the protest assume to make a finding of, or to report evidence of, or to declare the existence of, as a fact, the commercial designation of these articles, but states that the *reason* why the appraiser so considered them was that *"being articles of personal adornment*, they are" (not because so known in trade and commerce, nor because so known at the time of the enactment of the tariff law), but solely because they are *"in the opinion* of this office commercially known as jewelry." This is not the statement of a fact found, but of a conclusion of law based upon the stated fact that the described articles were for personal adornment. Further it appears that the appraiser so advised the collector, not by reason of his own finding or conclusion but owing and in obedience to the orders of superior au-

thority as by him applied, to wit, "in accordance with departments instructions in T. D. 34511." This court has ruled against this declaration of law by the appraiser that *every* article of personal adornment is jewelry.

The collector made no express *finding* upon the subject in his *decision*. In his letter of transmittal, June 19, 1915, long after decision was rendered, he did not advise the board whether he had adopted as the basis of his decision the fact that the goods were commonly or commercially, or both, known as jewelry. No doubt he was aware that the Supreme Court of the United States in United States *v.* Morrison (179 U. S., 456), and this court in United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D. 31506), and other courts had declared that certain string beads and bead necklaces were not jewelry, and therefore declined to hold that everything which was an article of personal adornment was necessarily jewelry, but viewed that "opinion" of the appraiser as not binding upon him either under the regulations, article 1515, or under the decisions of the Supreme Court. Marriott *v.* Brune *et al.* (9 How., 50 U. S., 619, 634); Earnshaw *v.* Cadwalader (145 U. S., 247, 249).

Commercial designation is a fact to be proved. Maddock *v.* Magone (152 U. S., 368). In the absence of competent proof of that fact the presumption is, and the collector was warranted in so assuming, that the commercial and common usage as to the articles were the same. Swan *v.* Arthur (103 U. S., 597, 598); Schmieder *v.* Barney (113 U. S., 645, 648). Likewise, the collector may have viewed that, regardless of commercial designation, a long course of legislation had indicated that Congress did not intend to rate the articles for duty according to their commercial name. De Forest *v.* Lawrence (13 How., 54 U. S., 274); United States *v.* Morrison (179 U. S., 456, 459).

So that the matter was thus presented to the board without any finding of fact save and except the implied finding of the collector that the goods were either commonly or commercially known as jewelry.

Furthermore, the facts of this case have been otherwise settled. The Government and counsel for the importers seem to have recognized this unsatisfactory situation and entered into a stipulation, thereby substituting said stipulation for all facts shown in the record. That stipulation reads:

It is hereby stipulated and agreed by and between counsel for the importers and Assistant Attorney General for the United States that the merchandise returned by the appraiser as "bead necklaces or chains as jewelry" and assessed by the collector with duty at the rate of 60 per cent ad valorem under paragraph 356 of the tariff act of 1913, consists of necklaces or neck chains composed in chief value of beads valued at over 20 cents per dozen pieces, is correctly represented by the accompanying three samples.

*It is further agreed that the protest be deemed submitted upon the aforesaid stipulation.*

The only other evidence before the board and this court save that stipulated is the agreed samples of the necklaces themselves. Upon this stipulation and these agreed samples the board found that the goods were "commonly" known as jewelry. The board evidently found no sufficient evidence to hold them commercially known as jewelry and observed the presumption that in the absence of such evidence the common and commercial usage are the same. They found within the stipulation and within the implied findings of the collector. The case came before this court upon the stipulation and samples, and this court upon the authority of its previous decisions rendered decision. This is a stipulation as to the *facts* upon which the case shall be submitted. This court has recently tersely declared that a stipulation of facts was binding upon the board and upon this court, as has ever been held by all courts. Salomon & Co. *v.* United States (7 Ct. Cust. Appls., 5; T. D. 36255).

The decision herein accords with and follows three previous decisions of this court and one of the Supreme Court (the latter regardless of commercial designation shown in the case). The issue therefore has become *stare decisis*. United States *v.* Beierle (1 Ct. Cust. Appls., 457; T. D. 31506); United States *v.* Sheldon & Co. (2 Ct. Cust. Appls., 283; T. D. 32034); Loewenthal & Co. *v.* United States (6 Ct. Cust. Appls., 209; T. D. 35464); United States *v.* Morrison (179 U. S., 456, 459).

The foregoing observations as to express and implied findings of the collector, and the effect thereupon of the reasons assigned by the appraiser for his classification in his report upon the protest, are in principle equally applicable to the petition for reargument filed by the Government in American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36259), and need not here be repeated.

In the latter case, however, it is urged that there is a conflict between this decision and that of American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36259) and United States *v.* American Bead Co. (3 Ct. Cust. Appls., 509; T. D. 35166), in that certain items in the latter were in fact imitations of amber, and were held to be imitation precious stones for use in the manufacture of jewelry. It would seem sufficient to call attention to the fact that the opinion here in question, as in that case, endeavored to confine jewelry and imitation jewelry to those materials *named* in paragraph 356 as jewelry materials. That was the gist of the decision in American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36259) and United States *v.* American Bead Co. (3 Ct. Cust. Appls., 509; T. D. 35166). Paragraph 448, however, of the tariff act of 1909, under which the latter decision was rendered, in enumerating the materials out of which jewelry as therein provided for might be made, used the words "diamonds, pearls, cameos, coral, or *other* precious or

semiprecious stones, or *imitations* thereof." Under that language, amber being in fact classed as a precious stone (see Standard Dictionary, Twentieth Century Edition, "Stones, precious"), came within the classification of precious stones, wherefore imitations of amber were imitation precious stones. Paragraph 356 of the present act, however, under which this decision was rendered, differs in enumerating the jewelry materials as therein provided and speaks of "precious or semiprecious stones, pearls, cameos, coral, or *amber*, or with imitation precious stones or imitation pearls." The mention of "amber" without including imitations thereof seems to confine this paragraph to genuine amber only. The word "amber" did not appear in the amended act, 1909. It was deliberately inserted in the amending act of 1913, and the surrounding and corresponding modifying language carefully redisposed so that by no construction can imitation amber be read into the paragraph as one of its members. The logical and only legal effect that can be accorded this deliberate action of Congress was to withdraw imitation amber and imitation amber articles from this paragraph. The difference in the decisions, therefore, is rested in the difference in the language of the acts.

The petition for reargument in each of the foregoing cases is *denied*.

MONTGOMERY, Presiding Judge, not having sat in the original hearings, took no part herein.