(C. D. 774)

J. S. Dreyfuss *v.* United States

United States Customs Court, Third Division

(Decided May 26, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Frank X. O'Donnell, Jr.*, and *Robert C. O'Grady*, special attorneys), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain nuts which were imported from Brazil on June 12, 1940. Duty was assessed thereon at the rate of 2½ cents per pound under the provision for "edible nuts, not specially provided for, not shelled" in paragraph

761 of the Tariff Act of 1930. The plaintiff claims that the nuts are dutiable at three-quarters of one cent per pound under the provision for "cream or Brazil nuts" in paragraph 757, as modified by the trade agreement with Brazil, published in T. D. 48034.

At the trial the plaintiff introduced samples of the nuts in issue and they were admitted and marked exhibit 1. The parties stipulated that said nuts have the botanical name "Sapucaia nuts."

The only question involved is whether sapucaia nuts are cream or Brazil nuts. Counsel for the plaintiff, in his brief, quotes the following definitions from Webster's New International Dictionary, Second Edition, 1939:

*sapucaia.* Any of several trees of the genus *Lecythis* in northern Brazil and British Guiana, the curious woody capsules (monkeypots) of which contain the sapucaia nuts.

*sapucaia nut.* The oily edible seed of the sapucaia, esp. of several species of Brazil and British Guiana, as *Lecythis amazonum, L. lanceolata, L. zabucayo,* etc. They are used for food, esp. in candies, and also furnish an oil.

*cream nut. a.* The Brazil nut. *b.* The nut of the cauchillo.

*cauchillo.* A tropical American timber tree (*Lecythis ollaria*) yielding a valuable reddish-brown wood, and bearing fruits with seeds resembling Brazil nuts and called cream nuts.

The plaintiff quotes also the following from the Encyclopaedia Britannica, Fourteenth Edition, Vol. 1, page 734, which appears under the subject "Amazon" and the subtitle "Flora":

Examples of species that attain the greatest height are the * * * Brazilnut or *castanhéira* (*Bertholletia* sp.), and the cream-nut or *sapucaia* (*Lecythis ollaria*)

The cream nut is also listed on page 232 of volume 6 of the New International Encyclopaedia, 1920 Edition, but reference therein is made to the definition of Brazil nut which is defined on page 688 of volume 3, reading as follows:

Brazil nuts, Cream nuts, or Nigger-toes, Seeds of *Bertholletia excelsa,* a majestic and beautiful tree of the family Murtaceae. It grows to the height of 100 or 120 feet and abounds on the banks of the Orinoco and in the northern parts of Brazil. It produces a round, woody pericarp, or seed vessel, almost as large as a man's head, within which are many of the seeds, or nuts. The pericarp is very heavy and solid, requiring the blow of a hammer to break it; when ready to fall, it is dangerous, on account of its weight, to walk under the tree. The seeds, which are popularly called nuts, vary from 18 to 24 and are wrinkled and triangular, having a hard shell and a pure-white kernel, which when fresh is very agreeable. They are chiefly exported from Para and French Guiana and are well known in stores. They yield a large quantity of oil, which is good for burning. The nuts of the monkey-pot tree, *Lecythis Ollaria* and *L. Zabucajo,* are produced in the pericarp which resembles a rusty iron pot with a. lid, the lid dropping off and letting out the seeds, which are oblong, grooved, and esteemed superior to the common Brazil nut. They are sometimes known as Sapucaia nuts or Paradise nuts, but they have not yet become a common article of commerce, as the trees grow chiefly in the interior parts of the country.

Counsel for the plaintiff argues, in his brief, that it is apparent from an examination of the authorities that the sapucaia nuts are cream nuts which are provided for in paragraph 757 of the Tariff Act of 1930, as modified by the trade agreement with Brazil. He does not claim that they are Brazil nuts.

Counsel for the defendant cites *New York Commercial Co.* v. *United States*, 10 Treas. Dec. 446, T. D. 26802, Abstract 8603, holding that sapucaia nuts are not dutiable under the provision for "Brazil nuts." He argues that, as it has been judicially determined that sapucaia nuts are not Brazil nuts, the merchandise herein involved cannot be classified under the provision for "cream or Brazil nuts."

In the Tariff Act of 1890, Brazil nuts were provided for in paragraph 583 of the free list and cream nuts were in paragraph 584. In paragraph 491 of the Tariff Act of 1894 and paragraph 622 of the Tariff Act of 1897, Brazil nuts and cream nuts were provided for separately, the provision reading, "Brazil nuts, cream nuts, palm nuts and palm-nut kernels." In paragraph 635 of the Tariff Act of 1909, the language was the same, except that the words "marrons crude" were inserted after the words "cream nuts." This tariff history indicates that Congress considered that Brazil nuts and cream nuts were different products. The decision in *New York Commercial Co.* v. *United States, supra,* related to the tariff provisions of the Tariff Act of 1897 and there is nothing in the decision which indicates that the provision for "cream nuts" was considered. Evidently the importer did not claim under that provision.

In the Tariff Act of 1913 there were no specific provisions for "Brazil nuts" or "cream nuts," but in the Tariff Act of 1922, paragraph 755, and in the Tariff Act of 1930, paragraph 757, provisions were inserted for "cream or Brazil nuts."

The question appears to be, does this language in the law indicate that Congress intended to provide only for Brazil nuts, or is the provision intended to cover nuts known as "Brazil nuts" and also other nuts known as "cream nuts"? We are of opinion that such a question of interpretation was settled in *United States* v. *Beierle*, 1 Ct. Cust. Appls. 457, T. D. 31506. In that case the merchandise consisted of barettes made of imitation jet and the collector classified them as jewelry under paragraph 448 of the Tariff Act of 1909. The court called attention to the legislative history showing that from the Tariff Act of 1846 down to the enactment of the Tariff Act of 1909 articles manufactured of jet were uniformly distinguished from jewelry, there being separate provisions for each commodity, and held that on account of this legislative distinction between the two classes of articles the imitation jet barettes were not jewelry within the common meaning of the term. The court said at page 461:

We think that it may be unqualifiedly said that from 1846 to the time of the enactment of the tariff law of 1909 all legislation upon the subject uniformly observed the distinction for tariff purposes between articles in imitation of jet and articles of jewelry, or commonly known as jewelry, as separate and distinct entities for dutiable purposes.

\*　　\*　　\*　　\*　　\*　　\*　　\*

That the dropping of the provision for imitation jet, in specific terms, in subsequent tariff acts did not indicate that Congress intended to do away with the well-established distinction between imitation jet articles and jewelry, but might indicate a purpose to continue that distinction, and to provide for them in some other more comprehensive provision in the tariff law is a well-established principle of interpretation in customs law. *Robertson v. Rosenthal* (132 U. S. 460); *Garrison Wright v. United States* (127 Fed. Rep. 1022).

Substantially the same rule of interpretation was employed in *Batjer & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726, wherein it was held that cordials were not within the provision for distilled spirits. The court said:

For more than 75 years spirits distilled from grain and other materials and cordials have been differentiated by Congress and have been provided for in numerous tariff acts as separate and distinct entities.—(Sec. 8, par. 5, Tariff Act of 1842; sec. 2, Tariff Act of 1862; sec. 2, par. 1, Tariff Act of 1864; sec. 21, Tariff Act of 1870; schedule H, Tariff Act of 1883; pars. 329 and 332, Tariff Act of 1890; pars. 237 and 240, Tariff Act of 1894; and pars. 289 and 292, Tariff Act of 1897.) In the absence of any manifest legislative intent to the contrary we must conclude, and in fact the Government admits, that the distinction between cordials and distilled spirits still continues and that the latter designation does not include the former.—*United States v. Beierle* (1 Ct. Cust. Appls. 457–461; T. D. 31506); *Garrison, Wright & Co.* v. *United States* (121 Fed. 149); *Reiche* v. *Symthe Collector* (13 Wall. 162); *Robertson v. Rosenthal* (132 U. S. 460). From this it follows that the cordials under consideration are not classifiable as distilled spirits and that they were not subject to the additional duty of $2.10 a gallon imposed by section 300 of the War Revenue Act of 1917.

Cream nuts are provided for in paragraph 757 of the Tariff Act of 1930 under the provision for "cream or Brazil nuts." We are of opinion that this is a case where the word "or" should be interpreted as meaning "and" and that the provision covers two commodities, namely, cream nuts and Brazil nuts. If Congress intended to provide for Brazil nuts only, it would not have inserted in the provision the word "cream" when the words "cream nuts" were given a meaning different from Brazil nuts in prior acts.

We find that the authorities establish that there are two kinds of cream nuts, one the Brazil nut and the other the nut from the trees of the *Lecythis* family of which there are several species, some of which produce the sapucaia nuts herein involved. The statement in the Encyclopaedia Britannica indicates that the cream nut tree is the sapucaia which produces the sapucaia nuts and the definition quoted from the New International Encyclopaedia describes the sapucaia nuts under the heading "Brazil nuts, cream nuts."

Under the rule of construction adopted in *United States* v. *Beierle, supra,* and in *Batjer & Co. et al.* v. *United States, supra,* the statute must be construed as covering both Brazil nuts and cream nuts and we hold that the sapucaia nuts herein involved are more specifically provided for as "cream nuts" in paragraph 757 than as "edible nuts, not specially provided for" in paragraph 761 and that, as the merchandise was imported after the effective date of the trade agreement with Brazil, it is dutiable at three-quarters of one cent per pound under paragraph 757 of that trade agreement. Judgment will be entered in favor of the plaintiff.