(C.D. 3665)

M. L. deLANGE v. UNITED STATES

United States Customs Court, Third Division

(Decided January 14, 1969)

*M. L. deLange*, plaintiff *pro se.*
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest, imported from Holland, is described on the invoice as "PRONTO" PEARL BARLEY type 583/15. It was classified in liquidation under item 131.12 of the Tariff Schedules of the United States as "Barley: * * * Other," and assessed for duty at the rate of 2 cents per pound. It is claimed in the protest that the merchandise is properly classifiable under item 131.10 of the tariff schedules as pearl barley at the duty rate of 0.4 cent per pound.

At the trial the plaintiff-importer produced from the custody of the Government and placed in evidence a sample of merchandise taken from the instant importation (plaintiff's exhibit 1), and also placed in evidence a sample of such merchandise taken from a subsequent importation (plaintiff's illustrative exhibit 2). Plaintiff concedes that the merchandise at bar is not in pellet form. And an inspection of exhibit 1 reveals the sample grains to be flat and circular in shape. No evidence was adduced by the defendant.

The competing tariff provisions read:

| Item | Article | Rate[s] of Duty |
|---|---|---|
| | Milled grain products: | |
| | Fit for human consumption: | |
| | Barley: | |
| 131. 10 | Pearl barley | 0.4¢ per lb. |
| 131. 12 | Other | 2¢ per lb. |

The question before the court is whether the merchandise at bar is pearl barley within the meaning of item 131.10 of the tariff schedules. Plaintiff argues that once the merchandise became pearl barley it did not become something else by virtue of subsequent processing further than by milling, i.e., pressing, rolling for the purpose of making the product pliable or soft for "quick" cooking. Defendant argues that the evidence at bar is insufficient to rebut the presumption of correctness attaching to the classification of the merchandise.

A provision for pearl barley is included in the Tariff Act of 1930 in paragraph 722. The Summary of Tariff Information (1929) com-

piled by the Tariff Commission for congressional use in the deliberations on H.R. 2667 which became the Tariff Act of 1930 states with respect to pearl barley (page 1179): "When . . . the grain is reduced to small . . . pellets, it is termed pearl barley." Webster's New International Dictionary (1930 edition) defines pearl barley (page 1587) as: "Kernels of barley ground to the form of small round grains, used in soups, etc." Funk & Wagnalls New Standard Dictionary (1952 edition) defines pearl barley or pearled barley (page 1817) as: "barley reduced to a round shot-like form by pearling: used in soups." And Webster's New International Dictionary (1957 edition) defines pearl barley (page 1799) as: "Barley ground into small, round grains."

From the foregoing definitions of pearl barley it is clear that a particular form of the barley kernel or grain, namely, round or ball shaped, is the quintessence of the nomenclature identifying the article from the standpoint of common usage of the term prior to the enactment of the Tariff Schedules of the United States in 1963. And nothing in the explanatory notes to the Tariff Classification Studies of 1960 pertaining to item 131.10 of the then proposed tariff schedules suggests any congressional intent to deviate from the common meaning of the term "pearl barley" under prior tariff provisions therefor. The explanatory notes simply state (page 100):

The provisions for milling products fit for human consumption have been set forth without any change in rates except that the obsolete provision for oat products valued at less than $2.00 per 100 pounds has been eliminated. * * *

Against such background then must be viewed the contention of the plaintiff as revealed in his brief where he states (page 3):

The defendant's point that this merchandise is not a pearl barley within the common meaning as the dictionary defines it, is of course correct, because, as the plaintiff readily admits, it is pearl barley to which something is done to make it more convenient for the housewife, and while the product did not change chemically in any respect, nor in its ultimate appearance, i.e., at the time of consumption after being cooked, it changed its appearance because of the rolling or pressing that was applied to make it quick cooking.

The effect of the foregoing statement is that plaintiff admits what the record readily shows, namely, that at the time of importation the subject merchandise was not in the condition of merchandise commonly known as "pearl barley," in that instead of being round or ball shaped, the merchandise at such time was flat and circular shaped.

It is well settled that the common meaning or a tariff term is presumed to be the same as its commercial meaning unless the contrary be shown, *Swan* v. *Arthur*, 103 U.S. 597; *Schmieder* v. *Barney*, 113

U.S. 645; *American Bead Co.* v. *United States,* 7 Ct. Cust. Appls. 161, T.D. 36465. Under this rule which we find to be *apropos* here it was incumbent upon the plaintiff, upon making a concession which in effect removed the imported merchandise from any possibility of classification according to its common meaning, to proffer evidence of a different commercial meaning consistent with his theory of classification. Plaintiff offered no evidence on the subject of commercial designation for the imported merchandise. Consequently, on the state of the instant record we agree with defendant that there has been a total failure of proof supporting a classification of the instant merchandise different from that rendered by the regional commissioner of customs herein. The protest is, therefore, overruled.

Judgment will be entered accordingly.