ORDERED, that defendant's motion for summary judgment be, and the same hereby is, granted, and it is further

ORDERED, ADJUDGED and DECREED, that the classification of the merchandise at bar by the appropriate customs officer, under item 425.52 of the TSUS, as modified by T.D. 68–9, be, and the same hereby is, sustained, and it is further

ORDERED, ADJUDGED and DECREED, that all claims by plaintiff be, and the same hereby are, overruled and dismissed with prejudice.

(C.D. 4631)

M. L. DE LANGE v. UNITED STATES

34

Court Nos. 69/7589, etc.

(Decided February 3, 1976)

M. L. de Lange pro se.
Rex E. Lee, Assistant Attorney General (Steven P. Florsheim, trial attorney), for the defendant.

RE, Judge: The question presented in this case pertains to the dutiable status, for tariff purposes, of certain merchandise imported by plaintiff from Holland in 1967 and 1968. The merchandise, consisting of grain, was invoiced as "quick cooking pearl barley." It was classified by the Customs Service under item 131.12 of the Tariff Schedules of the United States (TSUS) as milled "barley: other" fit for human consumption, and assessed with duty at 2 cents per pound.

Plaintiff challenges the classification and claims, alternatively, that the merchandise is properly classifiable either as "pearl barley" under item 131.10, TSUS, or as "cereal breakfast foods and similar cereal preparations" under item 182.30, TSUS. Under the claimed provisions, "pearl barley" carries a duty rate of 0.4 cents per pound, and "cereal breakfast foods and similar cereal preparations" are dutiable at a rate of either 4 or 5 percent ad valorem, depending upon the date of entry.

The pertinent tariff provisions read as follows:

Schedule 1, part 7, subpart B:

"Subpart B. – Milled Grain Products

Subpart B headnote:

1. The term "milled grain products," as used in this subpart, embraces flours, grits, groats, meal, flaked or rolled grains, and other products, all the foregoing, whether or not fit for human consumption, made or derived from the grains named in subpart

A of this part by grinding, crushing, breaking, rolling, flaking, pearling, polishing, or similar milling processes, but does not include by-products or wastes resulting from any of these processes.

Milled grain products:
Fit for human consumption:
Barley:

| | | |
|---|---|---|
| [Claimed] 131.10 | Pearl barley_____ | 0.4¢ per lb. |
| [Classified] 131.12 | Other_____ | 2¢ per lb." |

Schedule 1, part 15, subpart B:

"Subpart B. – Edible Preparations

Subpart B headnotes:

1. This subpart covers preparations fit for human consumption not provided for elsewhere in schedule 1.

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| [Claimed] 182.30 | Cereal breakfast foods and similar cereal preparations, by whatever name known, processed further than milling_____ | 5% ad val. [or] 4% ad val. [T.D. 68–9]" |

The merchandise in the present case has been the subject of prior customs litigation by the same plaintiff-importer. See *M. L. de Lange* v. *United States*, 62 Cust. Ct. 17, C.D. 3665, 294 F. Supp. 646 (1969) decided by Judge Richardson. In that case, identical or almost identical merchandise was classified, as in the present case, under item 131.12 of the tariff schedules. Plaintiff claimed it was dutiable as pearl barley under item 131.10 of the tariff schedules (having failed properly to file his alternative claim for classification under item 182.30 of the tariff schedules as a cereal preparation).

It was plaintiff's contention that the merchandise was pearl barley which, after pearling, was subjected to additional processing involving rolling or pressing in order to shorten the cooking time. The imported grains, which plaintiff conceded were not in pellet form, were flat and circular in shape—the result, he claimed, of the additional rolling or pressing operation.

Plaintiff maintained that the merchandise was pearl barley for tariff purposes regardless of the additional processing, shape, or size of the grain. He claimed that, whereas "pearl barley" was formerly recognized as having a ball or pellet shape, the term now applies to "broken pieces" and other shapes. On the ground that plaintiff had

failed to overcome the presumption of correctness that attached to the classification of the customs officials, the defendant offered no evidence.

In rejecting plaintiff's claim, the court cited various lexicographic authorities and the *Summary of Tariff Information, 1929* (a Tariff Commission publication prepared for congressional use on the bill subsequently enacted as the Tariff Act of 1930) all of which defined pearl barley as barley ground into small round grains or pellets. The court stated:

> "From the foregoing definitions of pearl barley it is clear that a particular form of the barley kernel or grain, namely, round or ball shaped, is the quintessence of the nomenclature identifying the article from the standpoint of common usage of the term prior to the enactment of the Tariff Schedules of the United States in 1963. And nothing in the explanatory notes to the Tariff Classification Studies of 1960 pertaining to item 131.10 of the then proposed tariff schedules suggests any congressional intent to deviate from the common meaning of the term 'pearl barley' under prior tariff provisions therefor. * * *" 62 Cust. Ct. at 19.

Referring to the long-standing principle of customs law that the common meaning of a tariff term is presumed to be the same as its commercial meaning, unless the contrary is shown, the court noted that plaintiff offered no evidence to establish a commercial designation for the merchandise consistent with his claimed classification. Accordingly, the government's classification of the merchandise was sustained on the ground that there was a total failure of proof to support plaintiff's claim.

In the case at bar, plaintiff submits the same arguments made in the prior case in support of his claim for classification under item 131.10 of the tariff schedules. In his brief he asserts that the "existing" standard for pearl barley is one which includes barley in various shapes, replacing the "antiquated" standard which limited that term to barley having a ball shape. This contention was considered and explicitly decided in the prior *de Lange* case. After studying the record in this case and the incorporated record of the prior case, the court is not persuaded that the holding in the prior case, with respect to the common meaning of "pearl barley," is in error. The court agrees with the findings made in the prior case that the merchandise, in its imported form and condition, was not commonly known as "pearl barley," and that to come within the common understanding of that term, a small ball or pellet shape is a *sine qua non* of the article. Indeed, the 1966 edition of *Webster's Third New International Dictionary of the English Language, Unabridged*, defines pearl barley as "barley ground into small round pellets."

Plaintiff relies upon the following statement in the *Summaries of Trade and Tariff Information*, 1966, Schedule 1, Volume 6, page 93:

"Pearl barley is made by placing large-kerneled, whole grain in a revolving perforated cylinder with abrasive disks. During the process of pearling, the hull and the bran are removed, and the whole grain is reduced to small round pellets known as white pearl barley. Pellets with some of the bran intact are known as brown pearl barley or pot barley. The further milling of white pearl barley reduces the product to flour."

It is to be noted that the quoted comment was written *after* the adoption of the TSUS in 1963, and thus cannot be considered as revealing the congressional intent at the time of the enactment of the tariff schedules. Furthermore, the statement does not indicate a change in the understanding, common or commercial, of the term in issue.

It is incumbent upon plaintiff to establish a commercial designation for the designation "pearl barley" which comports with his claim. This requires affirmative proof that there existed in the trade and commerce of the United States, at and prior to the enactment of the tariff term under construction, a commercial meaning different from its common meaning which is uniform, definite and general throughout the United States. *C. J. Tower & Sons v. United States*, 47 CCPA 85, C.A.D. 734 (1960); *United States v. M. & D. Miller, Inc.*, 41 CCPA 226, C.A.D. 556 (1954); *Jas. Akeroyd & Co. et al. v. United States*, 15 Ct. Cust. Appls. 440, T.D. 42641 (1928); *John A. Steer Company v. United States*, 41 Cust. Ct. 156, C.D. 2034 (1958).

In the present case the plaintiff again has failed to establish a commercial meaning different from the common meaning for pearl barley. The record is almost entirely limited to plaintiff's experience with the merchandise at bar. That experience consisted of importing and selling between five and fifteen shipments during the period 1949 through 1969, and what he considered to be the competitive product of domestic manufacturers. This record falls far short of establishing, by competent evidence, that the merchandise at bar is generally, uniformly and definitely recognized throughout the trade in this country as pearl barley.

In support of his argument that pearl barley need not be round or ball shaped, plaintiff cites certain federal specifications for pearl barley which were issued by the Commissioner, Federal Supply Service, General Services Administration. In addition to the fact that the sizes specified for sieve preparations, upon which plaintiff relies, do not establish anything pertinent to the issue presented, it is well settled that the definitions and regulations of other government agencies do not bind this court in its determination of the meaning of words under tariff laws. *United States v. Mercantil Distribuidora, S.A., et al.*, 43 CCPA 111, C.A.D. 617 (1956); *Swift & Co. v. United*

*States*, 27 CCPA 181, C.A.D. 83 (1939); *Julius Goldfarb v. United States*, 64 Cust. Ct. 40, C.D. 3956 (1970).

In the present action, plaintiff has not presented clear and convincing evidence of error which would justify this court in disregarding the persuasiveness and authority of the holding in *M. L. de Lange* v. *United States*, 62 Cust. Ct. 17, C.D. 3665, 294 F. Supp. 646 (1969). As aptly stated by the Court of Customs and Patent Appeals: "This requirement is not satisfied by a reargument of the former issues on the same or a merely cumulative record." *United States* v. *Dodge & Olcott, Inc.*, 47 CCPA 100, 103, C.A.D. 737 (1960). By the doctrine of *stare decisis*, the holding in the prior *de Lange* case, therefore, is dispositive of plaintiff's first claim in the present case. See also *Nishimoto Trading Company, Ltd., Arthur J. Fritz Company* v. *United States*, 72 Cust. Ct. 53, C.D. 4504 (1974), *aff'd*, 62 CCPA 34, C.A.D. 1140, 508 F. 2d 1340 (1975); *Julius Goldfarb* v. *United States*, 64 Cust. Ct. 40, C.D. 3956 (1970); *Manca, Inc.* v. *United States*, 47 CCPA 103, C.A.D. 738 (1960). Consequently, it is the determination of the court that plaintiff's first claim must fall.

Plaintiff's alternative claim is for classification of the merchandise under item 182.30 of the tariff schedules as a cereal breakfast food or similar cereal preparation. The court notes that the governing headnote, and the tariff provision itself, limit their coverage to foods and preparations which are (1) not provided for elsewhere in schedule 1, and (2) processed further than milling.

The presumption of correctness attaching to the classification of the customs officials has been codified in 28 U.S.C. § 2635(a) which states that "[t]he burden to prove otherwise shall rest upon the party challenging a decision." It is clear, therefore, that plaintiff has the burden of proving that the imported merchandise meets the requirements under item 182.30 of the tariff schedules. The record, however, contains no evidence as to how the subject merchandise was manufactured or processed. Moreover, plaintiff concedes that he has never seen the merchandise produced. Since plaintiff has failed to establish the primary requirement for the claimed alternative classification, this claim, also must be rejected. It is unnecessary, therefore, to consider whether plaintiff has established, as he must, that the imported barley product is a cereal breakfast food or similar cereal preparation.

Plaintiff relies upon a customs laboratory report, apparently prepared in connection with the merchandise in the incorporated case, to support his contention that the present shipment of barley was processed further than milling. This report, No. D 23542 of November 18, 1965, incorporated with the record of the prior case, states that "[t]he sample is processed pearl barley—rolled or pressed."

Plaintiff's reliance is misplaced. Clearly, that statement does not

address itself to the method of manufacture or the manner in which the rolling or pressing was accomplished. Furthermore, the court does not agree with plaintiff that the term "processed," as used therein, necessarily connotes a product processed further than milling. Finally, it is also to be noted that headnote 1 of schedule 1, part 7, subpart B, which governs items 131.10 and 131.12, states that the term "milled grain products," as used in that subpart, embraces, among others, *"rolled* grains * * * made or derived from the grains named in subpart A * * * by * * * rolling * * * or similar processes [emphasis added]." The court is not convinced that the rolling or pressing to which the merchandise may have been subjected, as suggested by the laboratory report, was not a "milling process" within the ambit of the headnote.* Of course, the report's observation that the sample was "processed pearl barley" also cannot be relied upon in support of plaintiff's first claim since admittedly the barley was flat in shape, and therefore lacking the prerequisite ball or pellet shape to be recognized as "pearl" barley.

In view of the present failure of proof, and the prior holding of this court in *M. L. de Lange* v. *United States*, 62 Cust. Ct. 17, C.D. 3665, 294 F. Supp. 646 (1969), both claims are dismissed.

Judgment will be entered accordingly.

(C.D. 4632)

---

*The *Summaries of Trade and Tariff Information,* 1966, *supra* at page 105, describe the milled oat products dutiable under items 131.25 and 131.27, TSUS, which also are governed by the headnote defining "milled grain products." Among the articles listed therein are oats which, after being hulled, are "steamed and rolled into thin flakes called rolled oats * * *." This process is very similar to the one plaintiff claims was performed on the merchandise at bar. Thus it may be observed that the Tariff Commission (now the International Trade Commission), which prepared the *Summaries,* considers rolling accompanied by steaming to be a milling process within the ambit of the headnote.