CENTRAL COMMERCIAL CO. ET AL. *v.* UNITED STATES (No. 2090).[1]

1. CONSTRUCTION—POPULAR VS. SCIENTIFIC.

Tariff terms are to be construed according to their popular, rather than scientific meanings.

2. SAME—CONTEXT AND FORMER TARIFF ACTS AS AID.

The different tariff acts, including the act of 1913, have, for more than a century, called whale oil fish oil. It would seem, then, that Congress regards a whale as a fish.

3. WHALE MEAT—FISH IN TINS.

Within the meaning of the tariff act. a whale must be regarded as a fish, notwithstanding that it is not one; and its meat in tins was properly classified under paragraph 216, tariff act of 1913, as fish in tin packages, rather than under free list paragraph 545 as meat.

United States Court of Customs Appeals, November 16, 1921.

APPEAL from Board of United States General Appraisers, Abstract 44072.

[Affirmed.]

*Frank L. Lawrence* for appellants.

*Wm. W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Harry M. Farrell,* special attorneys, of counsel), for the United States.

[Oral argument Oct. 4, 1921, by Mr. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

SMITH, Judge, delivered the opinion of the court:

Flesh of the whale in tins returned by the appraiser as whale meat was classified by the collector as "fish in tins," and assessed for duty at 15 per cent ad valorem under paragraph 216 of the tariff act of 1913, which, in so far as pertinent to the case, reads as follows:

216. Fish, except shellfish, by whatever name known, packed in oil or in oil and other substances  *  *  *  25 per centum ad valorem; all other fish, except shellfish, in tin packages, not specially provided for in this section, 15 per centum ad valorem.

The importer protested against the classification of the goods and the assessment thereof by the collector and claimed that the importation was "meat," free of duty under paragraph 545 of the free list, which, in so far as pertinent, reads as follows:

545.  *  *  *  meats of all kinds, prepared or preserved, not specially provided for in this section.

---

[1] T. D. 38935.

The Board of General Appraisers overruled the protest and the importers appealed.

The only question in this case is whether the flesh of the whale is "fish" or "meat" within the meaning of those terms as commonly and ordinarily understood.

Scientifically speaking, the whale is not a fish and is as far from being even a remote cousin to a fish as is a man or a monkey. The whale differs from the fish in that it breathes the air, is a warm-blooded animal, and is of the order of mammals known as cetaceans. Nevertheless, from the earliest times down to this hour the whale, because of its habitat, its fishlike form, and its finlike fore limbs and tail, has been called a fish by people in general. Moreover, the conscientious belief for hundreds of years of countless men, women, and children that "The Lord prepared a great fish to swallow up Jonah" (Jonah v, 17), and that that great fish was a whale (Matthew xii, 40), has served to strengthen the popular conception of the whale as a fish, especially as that classification expressed in the language of the times went unchallenged and the doubter, disregarding the fact that the Jonah whale was specially prepared for the occasion, questioned only its ability to do the swallowing.

Wherefore, notwithstanding all the efforts of science and the just indignation of the zoologist, the classification of the whale as a fish has persisted not only among the unlettered but among judges, legislators, and the cultured in general who ought to and probably do know better. Even the ichthyologist, who declines to recognize the whale as a fish, influenced by custom and contaminated by his environment, has no hesitation in speaking of the capture of whales as whale *fishing*, and of the places which they frequent as whale *fisheries*. One would suppose that fishermen went to fisheries to catch fish, still the expression "whale fishing" may be pardoned when it is considered that popular misuse of the verb "fish" has been so far approved that by extension the politician fishes for votes and things may be fished out of the mud as well as out of the water.

To say that a whale is a fish or to speak of "whale fishing" and of "whale fisheries," may be scientifically and linguistically wrong, but the fact remains that such is the popular usage and a popular usage, let it be remembered, sanctioned by the common law of England, which from the time that "the memory of man runneth not to the contrary," classified the whale, the porpoise, the sturgeon, and the grampus as *royal fish*, which in territorial waters "no man may take without the King's permit."—Paterson's Fishery Laws (pp. 9–25); De Jur. Mar. (ch. 7); History of the Foreshore and Sea Shore [3d ed.] (204–412; 17th ed., st. 1.)

Sad to say, judges responsive to the popular will seem to have fallen from the grace of correct speaking, and so "at the Greenland

whale fishery the ruling custom was held to be that the first harpooner who struck the fish was entitled to the property of the fish only if he continued to hold the whale by the line attached to the harpoon; but if his line broke, and a subsequent harpooner from another ship finished the capture by obtaining possession, the latter was entitled, for it was then a loose fish."—Paterson's Fishery Laws (pp. 9–25); Fennings *v.* Lord Grenville (1 Taunton); Littledale *v.* Scaith (1 Taunton [footnote] 243); Hogarth *v.* Jackson (2 Carrington & Payne, 753); Erskine's Principles of the Law of Scotland [14th ed.] pp. 115–116). The Greenland fisheries, by the way, were exploited by English, French, and Americans, and it was held that the customary law of the Greenland fisheries was binding on all who frequented them, and, taking precedence of the common law, was binding on British subjects. (1 Taunton, 241, 248, 249.)

It was our fortune to inherit from England much good law, some bad law, and a little indifferent English, in which we may safely include the denomination of the whale as a fish. Some of the good laws have been legislated out of existence to our disadvantage, most of the bad ones amended to our betterment, and the poor English sanctioned by our tariff laws to the extent at least of denominating the whale as a fish, whatever may be the congressional reservation as to the generic term applicable to the porpoise, the sturgeon, and the grampus.

The tariff acts of April 27, 1816, August 30, 1842, and July 30, 1846, laid a duty on "whale and other fish oils," the product of foreign fishing or of foreign fisheries. The act of July 30, 1846, provided separately for animal oils and fish oils, and imposed a duty on "oils, neatsfoot and other animal oil, spermaceti, whale and other fish oil, the produce of foreign fisheries." The act of October 1, 1890, subjected to duty "seal, herring, whale, and other fish oil not specially provided for." The acts of March 3, 1883, October 1, 1890, and August 27, 1894, exempted from duty "spermaceti, whale, and other fish oils of American fisheries." The acts of July 24, 1897, and August 5, 1909, imposed a duty on "seal, herring, whale, and other fish oils," and admitted free of duty "spermaceti, whale, and other fish oils of American fisheries." The act of October 3, 1913, admitted free "spermaceti, whale and other fish oils of American fisheries."

From this legislation it is apparent that for more than a century the oil of the whale has been regarded by Congress as the oil of a fish, and if the oil of the whale be the oil of a fish, consistency requires that the flesh of a whale be classified for tariff, if not for scientific purposes, as the flesh of a fish.

We are regretfully forced to the conclusion that judges, legislators, and people in general have classified the whale as a fish, and as the popular acceptation of tariff terms having no different commercial

meaning must prevail as against their scientific signification, we must hold that the whale is a fish and that its flesh is fish, dutiable as provided in paragraph 216 of the act in force.

The decision of the Board of General Appraisers is therefore *affirmed.*