(C.D. 3907)

ARTHUR J. FRITZ & CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 23, 1969)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Dominick M. Minerva* and *Owen J. Rader*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, AND ROSENSTEIN, Judges

ROSENSTEIN, Judge: This case involves the proper tariff classification of frozen brine shrimp (artemia salina) exported from Saskatchewan, Canada, and entered at the port of Blaine, Washington, in 1965 and 1966.

The merchandise was assessed under item 184.75 of the Tariff Schedules of the United States (TSUS) as other animal feeds, and ingredients therefor, not specially provided for, at ten per centum ad valorem. Plaintiff claims that the shipments are entitled to entry free of duty under TSUS item 184.55 as dead fish, not fit for human con-

sumption.[1] The pertinent provisions of the tariff schedules are as follows:

### SCHEDULE 1. - ANIMAL AND VEGETABLE PRODUCTS

\*   \*   \*   \*   \*   \*   \*

PART 15. - OTHER ANIMAL AND VEGETABLE PRODUCTS

\*   \*   \*   \*   \*   \*   \*

### Subpart C. - Animal Feeds

Subpart C headnotes:
 1. For the purposes of this subpart—
 (a) the term "animal feeds, and ingredients therefor" embraces products chiefly used as food for animals, or chiefly used as ingredients in such food, respectively; \* \* \*

\*   \*   \*   \*   \*   \*   \*

    Tankage; dead fish and whales; fish and whale scrap, meal and solubles; homogenized condensed fish and whales; all the foregoing not fit for human consumption:

\*   \*   \*   \*   \*   \*   \*

184.55    Other _____    Free
    Animal feeds, and ingredients therefor, not specially provided for:

\*   \*   \*   \*   \*   \*   \*

184.75    Other _____    10% ad val.

Plaintiff's two witnesses, who are associated with the exporter herein, Continental Brine Shrimp Holding Ltd., Watrous, Saskatchewan, testified that the brine shrimp are caught in nets in the highly saline Little Manitou Lake. They are washed with fresh water (at which point they die), transported to a processing plant where they are packaged, frozen and subsequently shipped to the United States.

The shrimp are too salty for human consumption, but are used as a food for tropical fish.

Brine shrimp are primitive crustaceans found in saline lakes throughout the world. Taxonomically, they are within the Phylum Arthropoda, Subphylum Mandibulata, Class Crustacea, Subclass Branchiopoda (Phyllopoda), Order Anostraca.

Crustaceans are invertebrates which have an exoskeleton (crustlike

---

[1] An alternative protest claim for classification under item 114.45 was not pressed at the trial nor referred to in plaintiff's brief and is therefore deemed abandoned.

shell), a segmented body and jointed appendages. In the scientific sense, they are not fish, which are vertebrates. Within the class of crustaceans is the Subclass Malacostraca. Order Decapoda, which includes crabs, hermit crabs, lobsters, shrimps and prawns. This order comprises the shrimp which are edible and used for human consumption.

According to one witness, Dr. Dixie Ray, a zoologist specializing in marine biology, brine shrimp are aquatic animals, but are not called shellfish within the "usually accepted context of that term" as it is—

> * * * one of these common terms that is used commercially mainly to apply to the invertebrate animals of the sea that are eaten by people, and clams, oysters, shrimps, lobsters, and so on, are included within this term "shellfish" which has really no scientific meaning at all. [R. 28.]

Plaintiff contends that brine shrimp are shellfish within the common meaning of the term (Dr. Ray to the contrary) and that the provision in item 184.55 for "dead fish * * * not fit for human consumption", taken in its common meaning encompasses inedible shellfish.

Defendant's position is two-fold: (1) that it was not the intent of Congress to include brine shrimp within the claimed provision, and (2) that plaintiff has failed to establish that the shrimp at bar are shellfish for tariff purposes.

We are in accord with plaintiff's claim that the involved brine shrimp are shellfish, but find that they are not "fish" within the contemplation of item 184.55.

Tariff laws are not drafted in terms of science but in the language of commerce which is presumptively that in common use. *Nylos Trading Co.* v. *United States*, 37 CCPA 71, C.A.D. 422 (1949). Therefore, in interpreting tariff statutes words are to be taken in their commonly received and popular sense or according to their commercial designation, if that differs from the ordinary understanding of the word, or unless the intent of Congress is otherwise established. *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, C.A.D. 296 (1945); *Hummel Chemical Co.* v. *United States*, 29 CCPA 178, C.A.D. 189 (1941).

Common meaning is a question of law, not fact, and the court is not bound by testimony, which is merely advisory, but may resort to extrinsic aids such as lexicons or draw upon its own knowledge. *United States* v. *National Carloading Corp., James S. Baker Import Co.*, 48 CCPA 70, C.A.D. 767 (1961).

"Shellfish" is a term of popular rather than scientific significance, and has been defined in *Webster's New International Dictionary*, second edition, unabridged (1956), as "* * * any aquatic invertebrate

animal having a shell, esp. a mollusk, as an oyster or clam, or a crustacean, as a lobster." See also *Pacific Mutual Sales* v. *United States*, 36 Cust. Ct. 100, C.D. 1758 (1956).

It has long been recognized that "shellfish" applies to crustaceans, including shrimp. In *C.H. Wyman & Co.* v. *United States*, 12 Treas. Dec. 648, T.D. 27791—G.A. 6503 (1906), the Board of General Appraisers, considering the provision of paragraph 659, Tariff Act of 1897 for "Shrimps and other shellfish" stated:

> Prawns are crustacea, very much like shrimps, except that they are larger, and without doubt would be comprehended within the provision for "shrimps and other shellfish," taking the words in their common meaning, and aside from the obvious implication that the expression "other shellfish" includes crustacea.

Defendant alleges, relying on the testimony of Dr. Ray, that the brine shrimp at bar are not of the same order of shrimp imported to be used for human consumption, that the former are not "true shrimp" and, therefore, not shellfish which is a "common term used commercially to refer to a special class of invertebrate sea animals eaten by people, * * *." (Brief, page 10.)

We do not think that "shellfish" is so finely honed in its commercial use as to include only shrimp of the Order Decapoda and not those of the Order Anostraca, or that it applies, in the popular sense, only to edible crustaceans; rather, it is a matter of common knowledge that the term embraces various forms of crustaceans without reference to their use for human consumption. Indeed, we have not located, nor has defendant apprised us of, any written authority which makes such distinction.

Moreover, defendant has not established a commercial designation for shellfish varying from its common meaning. The statement of the testifying zoologist (a teacher who is not engaged in the commerce of shellfish) that the term applies only to the edible variety does not establish a commercial meaning which is uniform, definite and general throughout the trade, a prerequisite to proving commercial designation. *C.J. Tower & Sons* v. *United States*, 47 CCPA 85, C.A.D. 734 (1960).

The remaining question for consideration is whether the brine shrimp herein, which we find are shellfish within the popular meaning of the term, come within the provision for "fish" in TSUS item 184.55.

Plaintiff relies upon legislative history, noting that the claimed item derives in part from paragraphs 1677 and 1780, Tariff Act of 1930, providing, respectively, for "fish imported to be used for purposes other than human consumption" and "tankage, fish scrap, fish meal, cod-liver oil cake, cod-liver oil cake meal, all the foregoing unfit for

human consumption." [2] It also asserts that the brine shrimp were formerly classifiable under paragraph 1677.

Plaintiff's reliance is somewhat misplaced; it overlooked the provision in paragraph 720(c) of that act stating—

The term "fish", as used in this Act, does not include shellfish.

Furthermore, shellfish are specially provided for in *paragraph 1761* which reads—

Shrimps, lobsters and other shellfish, fresh or frozen (whether or not packed in ice), or prepared or preserved in any manner (including pastes and sauces), and not specially provided for.

In fact, shellfish have been *eo nomine* provided for in the earlier tariff acts of 1922, 1913, 1909, 1897, 1894, 1890, 1883, and 1870, as well as the Philippine Tariff Acts of 1909 and 1905.

Thus, for almost 100 years Congress has distinguished for tariff purposes between fish and shellfish. A distinction once made by Congress concerning a commodity is presumed to be carried over into subsequent legislation on the same subject in the absence of a contrary legislative intent. *Robertson v. Rosenthal*, 132 U.S. 460 (1889); *Reiche v. Smythe*, 13 Wall. 162 (1871); *United States v. Davies Co.*, 11 Ct. Cust. Appls. 392, T.D. 39317 (1922); *American Express Co. v. United States*, 10 Ct. Cust. Appls. 275, T.D. 38680 (1921); *DeJonghe et al. v. United States*, 5 Ct. Cust. Appls. 134, T.D. 34189 (1914).

We find that the distinction in the Tariff Act of 1930 between fish and shellfish was carried over into the Tariff Schedules of the United States where, with the single exception of item 182.11, discussed *infra*, they are consistently treated throughout schedule 1 [Animal and Vegetable Products] as separate commodities.

The headnote to part 1 [Live Animals] of schedule 1 states:

1. This subpart covers all live animals, vertebrate and invertebrate, except fish and shellfish (see parts 3 and 15 of this schedule) and microbial cultures (see part 3 of schedule 4), but including whales and other sea mammals.

\*      \*      \*      \*      \*      \*      \*

The headnote to part 2 [Meats] states:

1. This part covers only meats, including meat offal, fit for human consumption. The meats of all animals, including whales

---

[2] The *Tariff Classification Study, Explanatory and Background Materials, Schedule 1,* November 15, 1960, prepared for congressional use in considering the proposed revised schedules, states, (p. 253)—

Item 184.55, as published for the hearing, has been rephrased for clarification. It is the practice to classify under paragraph 1780 a fish preparation known as fish solubles. Inasmuch as the existing language of paragraph 1780 does not clearly cover this product, the final draft has been changed to eliminate all possible uncertainty. This item has also been expanded to specifically provide for dead fish and whales. Some imports of dead fish and whales are now entered under paragraph 1677 and are principally used for feeding animals.

and other sea mammals but not fish and shellfish (see parts 3 and 15 of this schedule), are covered, and unless the context requires otherwise, reference to an animal includes such animals regardless of size or age.

\*     \*     \*     \*     \*     \*     \*

The headnote to part 3 [Fish and Shellfish] states:

1. The term "fish", as used in this part, does not include shellfish or whales or other mammals. This part covers only fish and shellfish, live or dead, fit for human consumption.

\*     \*     \*     \*     \*     \*     \*

4. Live fish and shellfish imported to be used for purposes other than human consumption are covered by item 190.45 (see part 15F of schedule 1) and certain other fish and shellfish products are covered by parts 14 and 15 of schedule 1.

In line with headnote 1, subparts A through D provide solely for fish and fish products, whereas subpart E covers shellfish exclusively.

Turning to part 15 [Other Animal and Vegetable Products], subpart A, "Products of American Fisheries", we note that item 180.00 provides for free entry of—

Products of American fisheries (including fish, shellfish, and other marine animals, spermaceti, and marine animal oils), which have not been landed in a foreign country, or which, if so landed, have been landed solely for transshipment without change in condition.[3]

Headnote 1, subpart B, "Edible Preparations", of part 15 covers—

\* \* \* preparations fit for human consumption not provided for elsewhere in schedule 1.

That subpart includes the following provision:

Balls, hash, pastes, puddings, and similar forms, all the foregoing of vegetables or of vegetables and meat, or fish (including shellfish), or both:

| | | |
|---|---|---|
| 182. 10 | Corned beef hash_____ | 20% ad val. |
| 182. 11 | Other _____ | 17% ad val. |

The *Tariff Classification Study, Explanatory and Background Materials, Schedule 1*, November 15, 1960, states at page 251:

Separate provisions in the present tariff for articles which are insignificant or nil in commerce have been dropped, and in some instances making the consolidation results in changes in rates of duty. Item 182.11 is derived from paragraph 775 [4] with the only

---

[3] This provision is a carryover from paragraph 1730(a) which also exempts from duty, in almost identical language, "All products of American fisheries (including fish, shellfish, and other marine animals \* \* \*."

[4] Paragraph 775 reads, "\* \* \* pastes, balls, puddings, hash, and all similar forms composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, \* \* \*."

change being in the superior heading which broadens the term "fish" to include "shellfish". Shellfish products are now dutiable under paragraph 721 at various rates of duty (clam juice in combination with other substances at 17½ percent ad valorem, clams in combination with other substances at 20 percent ad valorem on American selling price, and oysters or oyster juice in combination with other substances at 6 cents per pound). * * *

It is significant that the Commission found it necessary to provide specifically for shellfish in order to bring that product within the purview of item 182.11. There would have been no need to "broaden" the term "fish" if it had already included shellfish.

Finally, we note that subpart F, "Miscellaneous Animal Products", of part 15 includes item 190.45 which allows free entry of—

Fish, or shellfish, live, imported to be used for purposes other than human consumption.

The *Tariff Classification Study, supra*, states, at page 255:

Item 190.45 as published for hearing has been expanded to include live shellfish, as well as other live fish, imported to be used for purposes other than human consumption. * * * [5]

The Tariff Commission apparently had concluded that shellfish do not come within the ambit of the provision for *live* fish imported for purposes other than human consumption and must be *eo nomine* provided for if intended to be included therein. It follows that a provision in that same part 15 for *dead* fish not fit for human consumption also excludes shellfish unless the latter is specifically designated.

Certainly it is unlikely that the Commission, which revised and prepared the classification schedules in a manner "* * * which will be logical in arrangement and terminology * * *" and "eliminate anomalies",[6] intended to give inconsistent meanings to the same term where used in the same part of a schedule. Nor has it been demonstrated that a crustacean which is recognized as a shellfish, when alive, becomes, for tariff purposes a fish upon its demise.

We are unable to agree with plaintiff's contention that the exclusionary language of headnote 1 to part 3, cited *supra*, indicates congressional recognition that shellfish are fish and would be included in that part if not expressly excepted therefrom. Rather, we find that this headnote comports with the separate treatment accorded fish and shellfish throughout schedule 1 and merely emphasizes the distinction made between the two classes of articles.

The cases cited by plaintiff holding whale meat to be classifiable for tariff purposes as fish for human consumption (*Central Commercial*

---

[5] Item 190.45 is derived from paragraph 1677, Tariff Act of 1930, which provides for "Fish imported to be used for purposes other than human consumption."

[6] *Tariff Classification Study, Submitting Report*, November 15, 1960, p. 34. See section 101 of the Customs Simplification Act of 1954 (Public Law 768, 83d Congress).

*Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 131, T.D. 38935 (1921), and *J.T. Steed & Co. (Inc.) et al.* v. *United States*, 36 Treas. Dec. 544, T.D. 38053 (1919)), and sea lion carcasses and liver classifiable as fish imported to be used for purposes other than human consumption (*David G. Dalquest, Marvin Judd* v. *United States*, 53 Cust. Ct. 99, C.D. 2479 (1964), involved commodities which were not *eo nomine* provided for and which, under popular and common acceptation and usage, were known as fish and so considered by Congress. They are not applicable herein.

We have considered the other cases cited by plaintiff construing state regulations and statutes, but find, in light of our interpretation of the legislative intent herein, that they are not pertinent.

In view of our finding that the brine shrimp at bar are shellfish and not "dead fish" within the meaning of item 184.55, it is unnecessary to consider plaintiff's contention that the provision for "dead fish * * * not fit for human consumption" is more specific than that for other animal feeds not specially provided for.

We conclude that the merchandise at bar was correctly classified by the district director. The claim in the protest under item 184.55 is overruled, and the claim under item 114.45 is dismissed.

Judgment will be entered accordingly.